## CRUZAN *v.* SMITH ET AL.

PRACTICE.—*Special Finding of Facts and Conclusions of Law.*—To present a question for review under section 341 of the code, four things must concur : 1. One of the parties must request the court to find the facts specially, with a view of excepting to the decision of the court upon the questions of law involved in the trial. 2. The court must state the facts in writing. 3. The conclusions of the court upon the questions of law arising upon the facts found must be stated, and judgment must be entered accordingly. 4. There must be an exception to the decision of the court.

EXCEPTION.—An exception is an objection taken to the decision of a court upon a matter of law.

PRACTICE.—*Special Finding.—Exception.*—When a party excepts to the decision of a court on a special finding of facts and conclusions of law thereon, he admits that the facts are fully and correctly found, but says that the court erred in applying the law to the facts found to exist. When a case is thus prepared, the only question presented for decision is, whether the court erred in applying the law to the facts found. This question is presented for review by assigning for error, that the court erred in its conclusions of law.

SAME.—The failure of a party to except to the decision of the court is not remedied by a motion for a judgment on the special finding, or for a new trial on the ground that the court erred in its conclusions of law upon the special finding. Nor is any question presented for review by excepting to the finding of the court.

SAME.—*Appeal.*—An attempt and failure of a party to perfect an appeal under section 341 of the code will not deprive him of the right of perfecting his appeal under section 352 of the code, where all the facts have not been correctly found, or where the facts found do not cover all the issues in the cause. In such case, the party must move for a new trial for the reasons assigned in the sixth clause of section 352, and put the evidence in the record by a bill of exceptions.

PRINCIPAL AND AGENT.—*General Agent.*—A general agent is one who is authorized to transact all the business of his principal, or all his business of some particular kind, or at some particular place.

SAME.—The principal is bound by the acts of a general agent, if the latter acted within the usual and ordinary scope of the business in which he was employed, notwithstanding he may have violated the private instructions which the principal may have given him ; provided the person dealing with such agent was ignorant of such violation and of the fact that the agent exceeded his authority.

SAME.—The fact that the authority of an agent is limited to a particular business does not make his agency special ; it may be general in regard to that business, as though its range was unlimited.

SAME.—*Special Agent.*—A special agent is one who is authorized to do one or

Cruzan *v.* Smith *et al.*

more specified acts, in pursuance of particular instructions, or within restrictions necessarily implied from the act to be done.

SAME.—The principal is not bound by the acts of a special agent, if he exceeds the limits of his authority. And it is the duty of every person who deals with a special agent to ascertain the extent of the agent's authority, before dealing with him. If this be neglected, such person will deal at his peril, and the principal will not be bound by an act which exceeds the particular authority given.

SAME.—If a principal puts his agent in a condition to impose upon innocent third persons by apparently pursuing his authority, the principal will be bound by his acts, and he must lose in preference to such third persons.

SAME.—*Liability of Principal.*—If one who is the general agent of another in the purchase of wheat, as such agent, buys wheat to be paid for on demand at the current price at the time of demand, his principal will be liable, though the principal may have instructed his agent to buy only for cash, and though the principal may have paid the agent for the wheat, if the contract be made in good faith, upon the credit of the principal, and without any knowledge of the private instructions of the principal.

APPEAL from the Miami Common Pleas.

BUSKIRK, J.—The record in this cause presents for our consideration and decision two questions; the one involves a question of practice, and the other the merits of the cause.

The complaint was in two paragraphs. The first alleged that the appellant, on the 17th day of April, 1865, sold and delivered to the appellees, at their warehouse, in the town of Cicero, in the county of Hamilton, and State of Indiana, two hundred and sixty-two bushels and fifty pounds of wheat; that in consideration thereof the appellees promised to pay him the market price, whenever he demanded the same; that on the 10th day of November, 1865, he demanded of the appellees the sum of five hundred and twenty-one dollars and sixty-six cents, that being at the rate of two dollars per bushel, and the then market price for said wheat, which the appellees refused to pay. The second paragraph was for goods sold and delivered, and for money had and received. Bills of particulars were filed with and made a part of each paragraph. The appellees answered by the general denial.

By the agreement of the parties, the cause was submitted to the court for trial, who, at the request of the parties, ren-

dered a special finding of the facts and the conclusions of law thereon, which were in these words:

1. That the plaintiff, about the 15th of April, 1865, delivered to Scott Carson, at Cicero, Indiana, two hundred and sixty-two bushels and fifty pounds of red wheat, which was to be paid for whenever the plaintiff called for the money, and at the market price when called for; Carson, at the time he received the wheat, and before that, represented to the plaintiff and others that he was the agent of the defendants, and authorized to enter into such an agreement. The plaintiff demanded payment for the wheat during the month of March, 1866, when said wheat was worth two dollars per bushel.

2. That the plaintiff has received no pay for his wheat, neither from the defendants nor from Carson.

3. When the wheat was delivered, it was put by Carson, with other wheat of the defendants of like quality, in the warehouse, which was afterward delivered by him to the defendants at Cicero.

4. That the defendants had no knowledge that the plaintiff had stored any wheat with Carson, nor that Carson had received any wheat in store, in their name, until after they had received this wheat and paid Carson for it.

5. That James C. Thompson, in behalf of the defendants, on or about the 18th day of August, 1864, entered into an agreement with Scott Carson, in effect as follows: Smith & Thompson, the defendants, were to furnish Carson with the money to purchase wheat; also the use of the defendant Smith's warehouse and grain sacks; Carson was to purchase wheat at such prices as Smith & Thompson should give him from time to time, and to deliver it to them in the cars at Cicero, and the defendants were to pay him an advance of four or five cents per bushel over and above the price paid by him. The wheat was to be bought for cash only.

6. Carson had no other authority to bind the defendants, in the contract with the plaintiff, than what he derived from

the above agreement. Immediately after making the agreement above referred to, Carson took possession of the said warehouse, and commenced buying and delivering wheat to the defendants; that he continued in such business about nine months, during which time he bought of various persons, and put on the cars for the defendants, several thousand bushels of wheat, in which was included the wheat in controversy, that was stored with Carson; and that the defendants received all the wheat delivered in said warehouse, shipped it off, sold it, and received the proceeds thereof, without any knowledge on their part that any part of said wheat had been stored with Carson in their name; and the court further finds that the plaintiff delivered his wheat, as he believed, to the defendants, in their warehouse, in good faith, and without any knowledge whatever that Carson's instructions prohibited him from receiving said wheat in store.

Upon the foregoing facts, the court draws the following conclusions of law:

1. That Scott Carson had no authority to bind the defendants in the contract sued on, and the contract for the purchase of said wheat, made with Carson, was not binding on them.

2. The defendants, having the wheat of the plaintiff from Scott Carson, under the agreement entered into between him and them for the purchase of wheat, and having been fully paid for by the defendants to Carson, without any knowledge of the claim of the plaintiff for payment, are not liable.

3. The defendants are not liable in this action, and the finding is in their favor for costs.

Judgment for the defendants for costs.

Immediately following the above special finding is the following entry in the record:

"To which finding of the court the plaintiff excepts, and moves the court for a new trial, and files written causes in these words: The plaintiff moves the court for a new trial of this cause for the following reasons: first, the findings of

the court are not sustained by sufficient evidence; second, the findings of the court are contrary to law; third, the findings of the court do not embrace all the facts in the case, as disclosed by the pleadings and evidence; fourth, the court erred in its conclusions of law upon the facts in this case, in this, that the findings should have been in favor of the plaintiff in the place of the defendants."

The motion for a new trial was overruled, and the appellant excepted. '

It is earnestly maintained by the appellees that the correctness of the decision of the court upon the special finding of facts is not presented by the record. The solution. of this question involves an examination of the statute and the adjudged cases in this court. Section 341 of the code provides for a special finding of facts, and the decision of the court upon such facts, and reads as follows:

"Sec. 341. Upon trials of questions of fact by the court, it shall not be necessary for the court to state its finding, except generally, for the plaintiff or defendant, unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall first state the facts in writing, and then the conclusions of the law upon them, and judgment shall be entered accordingly." 2 G. & H. 207.

To present a question for review in this court, under the above section of the statute, four things must concur; first, one of the parties must request the court to find the facts specially, with the view of excepting to the decision of the court upon the questions of law involved in the trial; second, the court must state the facts in writing; third, the conclusions of the court upon the questions of law arising upon the facts found must be stated, and judgment must be entered accordingly. There must be an exception to the decision of the court. The exception is not to the finding of the court upon questions of fact, but to the conclusions of law drawn by the court upon the facts found. Section 342 of the code defines an exception to be "an objection taken to

the decision of the court upon a matter of law." 2 G. & H. 208.

When a party excepts to the decision of the court, he admits that the facts are correctly and fully found, but says that the court erred in applying the law to the facts found to exist. When a case is thus prepared for this court, there is but a single question of law presented for our decision, and that is, whether the court erred in applying the law to the facts found, and such question is presented for review here by assigning for error that the court erred in its conclusions of law.

This is neither a new nor open question in this court, but the correct practice under section 341 does not seem to be well understood by the profession generally. A construction has been placed upon the section of the code under examination in the following cases: *Williams* v. *The New Albany and Salem R. R. Co.*, 5 Ind. 111; *Myerson* v. *Neff*, 5 Ind. 523; *Addleman* v. *Erwin*, 6 Ind. 494; *Spencer* v. *Russell*, 9 Ind. 157; *The Indianapolis Insurance Co.* v. *Mason*, 11 Ind. 171; *Peden's Adm'r* v. *King*, 30 Ind. 181; *Grimes* v. *Duzan*, 32 Ind. 361; *Smith* v. *Jeffries*, 25 Ind. 376; *Schmitz* v. *Lauferty*, 29 Ind. 400. In the two cases last cited, it was expressly held by this court, that "the exception must be taken to the conclusion of law upon the facts found, and not to the finding."

Nor will the failure of the party to except to the decision of the court be remedied by a motion for a judgment upon the special finding, or for a new trial on the ground that the court had erred in its conclusions of law upon the special finding. *Peden's Adm'r* v. *King*, *supra*.

In the case under consideration, the exception was to the finding of the court. There was no exception to the decision of the court, and consequently no question is properly presented for our decision under said section of the code.

We are next to inquire whether a party who has attempted, but failed, to bring his case into this court under section 341 can move for a new trial on the ground that the finding was

Cruzan *v.* Smith *et al.*

not sustained by sufficient evidence, and put the evidence into the record by a bill of exceptions, and thus require us to determine whether the court erred in overruling the motion for a new trial. The previous rulings of this court, in the cases above cited, seem to hold that the attempt and failure of a party to perfect an appeal under section 341 will not deprive him of the right of perfecting his appeal under section 352 of the code, where all the facts have not been correctly found, or where the facts found do not cover all the issues in the cause. But in such case the party must move for a new trial for the reasons specified in the sixth clause of section 352, which are, "that the verdict or decision is not sustained by sufficient evidence, or is contrary to law," and put the evidence in the record by a bill of exceptions.

GREGORY, C. J., in speaking for the court in *Schmitz* v. *Lauferty, supra,* says: "It is claimed by the appellee that the main question in this case is not presented; that the appellant ought to have excepted to the conclusions of law, and that a motion for a new trial is not the proper mode of reaching it. When the evidence is not made a part of the record, and the case is prepared for this court under the three hundred and forty-first section of the code, 2 G. & H. 207, a motion for a new trial is not the mode of reaching an error of the court below in its conclusions of law. *Smith* v. *Jeffries*, 25 Ind. 376. But if the 'decision is not sustained by sufficient evidence, or is contrary to law,' then the case is within the sixth specification of section 352 of the code, 2 G. & H. 212, and a motion for a new trial is proper."

It was held by this court, in *Peden's Adm'r* v. *King, supra,* that "to prepare a case for this court under section 341 of the code, the court below should 'first state the facts in writing, and then the conclusions of the law upon them,' to which the party aggrieved enters his exception. When the finding covers the issues, and the court has passed on all the facts involved in the case, the question is not saved by a motion for a new trial, or for judgment on the special finding."

We proceed to inquire whether the court found correctly

Cruzan *v.* Smith *et al.*

all the facts, and whether the facts so found covered all the issues in the case. The first paragraph of the complaint alleged that the plaintiff had sold and delivered to the defendants certain wheat, upon terms stated. The second paragraph was for goods sold and delivered, and for money had and received.

The court did not find whether the plaintiff sold and delivered any wheat to the defendants, but in the first and sixth findings found that the plaintiff had delivered certain wheat to Scott Carson, who was acting as the agent of the defendants; and in the fourth finding the court found that the plaintiff stored certain wheat in the warehouse of the defendants. We have carefully examined the evidence in the record, and are entirely satisfied that the court did not find the facts correctly, and that the facts so found did not cover the issues in the case. The issues in the case were, whether the plaintiff had sold and delivered to the defendants certain wheat, and whether they had paid therefor. The fact found by the court was, that the plaintiff had stored certain wheat in the warehouse of the defendants. There is nothing disclosed in the evidence about storing wheat, but it was clearly and conclusively proved that the plaintiff had sold and delivered to Scott Carson certain wheat; that Carson had mixed such wheat with other wheat belonging to the defendants, and had delivered the same to the defendants, who had shipped and sold the same, and had received the money therefor, and that they had paid Carson for such wheat, who had failed to pay the plaintiff therefor. The only controversy in the case was, whether, upon the facts, the defendants were liable to the plaintiff for the value of such wheat. The court seems to have decided the case upon the liability of the defendants as warehousemen, and not as purchasers. The law, as applied to warehousemen, is very different from that by which the liability of purchasers is governed. The facts in the case not having been correctly found, and as such finding did not cover all the issues in the case, and the court having applied

the wrong principle of law to the facts of the case, we proceed to determine whether the court erred in overruling the motion for a new trial.

The facts, as shown by the evidence, are as follows: The appellees employed Scott Carson to purchase wheat for them, at the town of Cicero, in the county of Hamilton, and State of Indiana, on commission; they furnished him with the use of a warehouse and the grain sacks which belonged to one of them; that the appellees being conductors on a railroad that passed through said town, they, from time to time, furnished Carson with money to pay for wheat by him purchased, and with newspapers containing the current market price of wheat; that the appellees gave Carson private instructions to purchase for cash only; that Carson took possession of the warehouse, which had the name of Smith, one of the appellees, over the door, and used sacks furnished by the appellees, the most of which were marked S. &. T.; that Carson continued to purchase wheat for about nine months; that the appellees passed the said town on trains of cars nearly every day in the week except Sunday, and nearly every time they passed they conversed with Carson, frequently gave him money and slips containing the list of prices; the appellees very frequently spoke of Carson as their agent, and during the nine months that Carson was engaged in buying wheat, he made contracts in the name of the firm of Smith & Thompson, gave receipts as their agent, and on all occasions held himself out as such agent; Carson, as such agent, purchased of the appellant two hundred and sixty-two bushels and fifty pounds of wheat, and agreed to pay him on demand the market price of such wheat at the time of demand. The appellant, in good faith, believing that Carson was the agent of the appellees, sold the wheat on their credit, without any knowledge of the instructions of the appellees to Carson to purchase for cash only, and not on credit; the appellees received the wheat purchased of appellant, and sold the same and received the proceeds of the

sale, as they did with the other wheat purchased by Carson for them; the appellees paid Carson for all the wheat he put on the cars for them, and while it does not appear that the appellees had any knowledge that the wheat purchased of appellant was bought on credit, they must have known that Carson had purchased on credit the wheat of some person, for they received more wheat than could have been purchased with the money they had furnished. It was also shown that Carson purchased wheat of several other farmers, on the same terms and conditions on which he had purchased the wheat of the appellant.

If the facts above stated constitute Carson the general agent of the appellees in the purchase of wheat for them at Cicero, in Hamilton county, Indiana, they are liable to the appellant for the value of the wheat so sold and delivered; but if, under the facts stated, Carson was only the special agent of the appellees, then they are not liable.

The distinction between a general and special agent is very accurately and correctly stated by Mr. Wait, in his work on Law and Practice, vol. 1, p. 215, where it is said: "A general agent is one who is authorized to transact all the business of his principal, or all his business of some particular kind, or at some particular place. The principal will be bound by the acts of a general agent, if the latter acted within the usual and ordinary scope of the business in which he was employed, notwithstanding he may have violated the private instructions which the principal may have given him, provided the person dealing with such agent was ignorant of such violation and that the agent exceeded his authority. *Munn* v. *Commission Co.*, 15 Johns. 44; *Jeffrey* v. *Bigelow*, 13 Wend. 518. The authority of an agent being limited to a particular business does not make it special; it may be as general in regard to that, as though its range were unlimited. *Anderson* v. *Coonley*, 21 Wend. 279. A special agent is one who is authorized to do one or more specific acts, in pursuance of particular instructions or within restrictions nec-

essarily implied from the act to be done. The principal is not bound by the acts of a special agent, if he exceeds the limits of his authority. And it is the duty of every person who deals with a special agent to ascertain the extent of the agent's authority before dealing with him. If this is neglected, such person will deal at his peril, and the principal will not be bound by any act which exceeds the particular authority given."

STORY, in his work on Agency, states the law thus: "Whatever acts are usually done by such class of agents, whatever rights are usually exercised by them, and whatever duties are usually attached to them, all such acts, rights, and duties are allowed to be incidents to the authority confided to them in their particular business, employment, or character."

The above authorities are much in point, and, in our opinion, clearly establish that Carson was the general agent of the appellees in the purchase of wheat at the town of Cicero, in said county and state.

But it is insisted by the appellees, that whether Carson was the general or special agent, he was acting under special instructions, and that if he exceeded the instructions of his principals, they are not bound by his acts. This position is not sustained by authority. In *Edwards* v. *Schaffer*, 49 Barb. 291, the court say: "If a general agent disregards his specified instructions, he will be liable therefor to his principal, but his acts are nevertheless binding on the principal as regards third parties, without notice of such instructions."

The rule is stated in 2 Kent Com. 620, thus: "The acts of a general agent, or one whom a man puts in his place to transact all his business of a particular kind, will bind his principal, so long as he keeps within the general scope of his authority, though he may act contrary to his private instructions; and the rule is necessary, to prevent fraud and encourage confidence in dealing."

But the precise point under examination has been considered and decided by this court, and such decisions are fully

Cruzan *v.* Smith *et al.*

supported on principle, and by the adjudged cases in other states.

In *Manning* v. *Gasharie,* 27 Ind. 399, this court say: "It is well settled that the acts of a general agent, with reference to the subject of the agency, will bind his principal, although he may have received private instructions narrowing or withdrawing his authority, unless such instructions are known to the party dealing with him."

The case of *Stapp* v. *Spurlin,* 32 Ind. 442, resembles the case under consideration in many respects. That was an action by Spurlin against Stapp & Co., to recover the value of certain wheat sold and delivered to Andrews, as the agent of Stapp & Co. The defence was the same as in this case. It was in the first place contended that Andrews was not an agent of the defendants; and in the next place it was insisted that if Andrews was an agent, his principals were not liable, because he was not authorized to purchase wheat on credit, and they had furnished him with money to pay for all the wheat he had purchased. The court held, upon the facts of the case, that Andrews was the agent of Stapp & Co. for the purchase of wheat at the point named. In reference to the defence that Andrews was not authorized to purchase on credit, and that the principals had settled with and paid the agent for all the wheat he had purchased and shipped, without any knowledge that he had not paid for said wheat, the court say: "Andrews was the agent of the appellants in the purchase of the wheat, and if they furnished him with the money to pay for it, and he failed to do so, it was not the fault of Spurlin, and the default of their own agent can furnish the appellants no defence to this suit. Their remedy is against the agent."

Again the court say: "But it seems very clear that the instruction asked by the appellants was properly refused, because it is not law. It seeks to charge the appellee with the consequences of the misconduct and bad faith of the appellants' agent in his relations with them. If they

furnished the agent with money to pay for the wheat, it was his duty to make the payment, but if he failed to do so, and converted the money to his own use, it was simply a violation of the trust and confidence reposed in him by his principals, and as they trusted him to act for them, as between them and one who has dealt with him as their agent, in good faith, they must suffer the consequences of his bad faith with themselves."

The Supreme Court of New York, in the case of *Reynolds* v. *Kenyon,* 43 Barb. 585, says: "As between a principal who has put it in the power of his agent to misappropriate the funds of the principal, and a third party dealing in good faith with the agent in a matter within the general scope of his authority, a loss resulting from a misappropriation should fall upon the former."

Mr. Wait states the law as follows: "It is a universal rule, based upon principles of policy, propriety and justice, that if a principal puts his agent in a condition to impose on innocent third persons, by apparently pursuing his authority, the principal will be bound by his acts, and he must lose in preference to such third persons. *Dunning* v. *Roberts,* 35 Barb. 463; *Cook* v. *Adams,* 1 Bosw. 497; *North River Bank* v. *Aymar,* 3 Hill, 263; *Farmers, etc., Bank* v. *Butchers, etc., Bank,* 4 Kern. 623; S. C. 2 E. P. Smith, 125."

There is an unbroken current of authority, both in England and in this country, in support of the principles above stated; and we are very clearly of opinion that under the facts of this case Carson was the general agent of the appellees in the purchase of wheat; that his contract with the appellant was within the general scope of his authority, and rendered his principals liable; that the facts that he had violated his private instructions, and that the appellees had fully paid him for the wheat by him delivered to them, constitute no defence, where the contract was made, as in this case, in good faith upon the credit of the principals, and without any knowledge of the private instructions of the principals to the

agent; and that the court erred in overruling the motion for a new trial.

The judgment is reversed, with costs; and the cause is remanded, with directions for further proceedings in accordance with this opinion.

*D. Moss*, for appellant.

*N. O. Ross* and *R. P. Effinger*, for appellees.