Indiana, Illinois and Iowa Railway Company v. Snyder, Admr.

No. 15,453.

INDIANA, ILLINOIS AND IOWA RAILWAY COMPANY v. SNYDER, ADMINISTRATOR.

ASSIGNMENT OF ERROR.—*Instructions.—Joint Assignment.*—An assignment of error that "the court erred in giving" several numbered instructions, and an assignment of error that "the court erred in refusing" to give several numbered instructions are not available unless all the included instructions given are erroneous and all the refused instructions correct.

MASTER AND SERVANT.—*Safe Appliances.—Duty to Provide.—Vice Principal.—Negligence.*—A master is charged with the duty of providing safe and suitable appliances, and if he entrusts such duty to an employe the latter becomes a vice principal and his negligence in such matter is the negligence of the master.

SAME.—*Railroad.—Hand Car Handle.—Knowledge of Defect.—When Carpenter Who Makes Becomes Vice Principal.—Injury to Section Hand.—Liability of Master.*—A carpenter in the shops of a railroad company, who is required by the company to make hand car handles and put them in place, is as to such service a vice principal and not a fellow-servant, and knowledge on his part that a handle which he makes and places is defective, charges the master with notice and renders the latter liable for an injury resulting to a section hand sustained while using the car in the due course of his employment.

SAME.—*Inspection.—Subsequent Knowledge of Defect.*—An inspection by the company of the lumber from which the car handle was made before it went into its shops, which inspection resulted in finding the lumber clear and free from knots, does not relieve the master from liability where it appears that knowledge of a defect was afterwards obtained in time to remedy the same but was negligently not acted upon.

From the Jasper Circuit Court.

*H. K. Wheeler* and *S. P. Thompson*, for appellants.
*E. P. Hammond* and *W. B. Austin*, for appellee.

JORDAN, J.—This was an action by the appellee, as the administrator of James Pickner, deceased, against appellant to recover damages on account of a personal injury, which resulted in the death of decedent. The

complaint, omitting the formal parts, sufficiently alleges, among other things, that the deceased, while in the employ of appellant as a section hand, in the proper discharge of his duties as such servant, in operating a hand car upon appellant's road, was injured and thereby killed by reason of the negligence of appellant in failing to furnish him safe machinery and appliances with which to do his work and discharge his duties as such employe. That while engaged in propelling said hand car the handle thereof broke, by reason of the fact that it was defective, unsafe and dangerous, which rendered it unsafe for use, all of which at the time of the accident and long prior thereto was known to appellant and wholly unknown to decedent; that appellant negligently and carelessly furnished the same for the use of the deceased as such servant; that the injury and death alleged occurred without the fault or negligence of the employe.

A trial resulted in the jury returning a general verdict in favor of appellee, together with numerous answers to interrogatories. Over motion for judgment on answers to the interrogatories and for a new trial, the court rendered judgment on the verdict from which this appeal is prosecuted.

The errors assigned in this court are:

1st. The court erred in overruling the demurrer to the complaint.

2d. The court erred in sustaining the demurrer to the first paragraph of the answer.

3d. The court erred in overruling appellant's motion for judgment on the answer of the jury to the special interrogatories, notwithstanding the general verdict.

4th. The court erred in overruling the motion for a new trial.

The first and second alleged errors are not argued by

Indiana, Illinois and Iowa Railway Company *v.* Snyder, Admr.

counsel for appellant, and therefore are waived and will not be considered by this court.

. The action of the court below in giving and refusing instructions, is complained of and criticised by the learned counsel for appellant. In the motion for a new trial, the error of the trial court in giving and refusing instructions was assigned as follows:

"7. The court erred .in giving instructions asked by plaintiff, to-wit: Numbers 1, 2, 3, 4, 5, 6, 7, 8, 8½, 9, 10 and 11, which instructions were each and every one excepted to, as appears by endorsement and bill of exceptions No. 2, duly filed."

"8. The court erred in refusing instructions Nos. 4, 10, 11, 12, 16, 19, 23, 25, 26, 27, 28, 29, 30, 33, 36, 37 .and 38 tendered by defendant, as appears by bill of exceptions No. 1."

These assignments are both joint, and the instructions given are called in question as an entirety, as are likewise those refused. It is well settled by the decisions of this court, that assignments in gross, like the above, can only be maintained, and be available to the party complaining, upon his showing that all of the instructions given are erroneous, and all refused are correct. *Ohio, etc., R. W. Co.* v. *McCartney,* 121 Ind. 385; *Wallace* v. *Exchange Bank, etc.,* 126 Ind. 265.

It is evident that, at least, some of the instructions given were proper, and that some refused were not correct, and hence, under the rule stated, the contention of appellant must fail, and this court must decline to consider the points attempted to be raised upon the instruction given or refused by the trial court.

From the evidence in the record, and the answers of the jury to the interrogatories, the following material facts substantially appear to have been established upon the trial of this cause: That James Pickner, the de-

ceased, on February 22, 1889, and prior thereto, was in the employ of the appellant, and a servant thereof in the capacity of a section hand. On that day, he, with three other section men, in the employ of appellant, boarded a hand car, for the purpose of returning from their labor. This car had been furnished by appellant to the deceased and the other section hands, to be used by them in the discharge of their duties, and in going to and returning from their work. On the day in question, the weather was intensely cold, and a strong wind was blowing from the direction that these men were propelling the hand car. Each turned his back from the wind as a protection from the intense cold. The deceased was riding upon the front end of the car, and while assisting in propelling it, the handle of the car, upon an upward stroke, suddenly broke, and thereby he was thrown upon the railroad track, and sustained injuries from the effects of which he died, leaving surviving him a wife and one minor child. The appellant maintained and operated machine shops for the purpose, in the main, of repairing its machinery and appliances—including its hand cars—used by it in the operation of its road, and the business in which it was engaged. The car in question, some six or eight weeks prior to the time of the accident, had been sent, by appellant, to these shops for repairs—including a new handle. The handle in controversy was manufactured and placed in the car by one Savaie who was a mechanic—being a carpenter of thirty years' experience—in the employ of appellant at said shops, engaged in the work of repairing the company's hand cars. The handle which broke was constructed by Savaie out of ash lumber which was brash or brittle, defective and unsound, and as some of the witnesses stated, rotten or decayed.

A condition which Savaie, in the construction of the

handle, could and did discover, and of which he thereby had notice, that the external or surface appearance of the handle, when constructed and placed in the car, was such that its defective condition could not be discovered by inspection of its surface, or by those who used it; that the car had been returned from said shop, where it had been repaired, and had been in use thereafter about six weeks, during which time the deceased had used it in and about his work as a section hand.

The appellant had ordered clear white ash lumber, free from knots, for the construction of its car handles, and when delivered, it had been inspected in bulk, and no defects in the timber had been discovered; that white ash timber is the kind generally used for such handles; that the deceased had no notice or knowledge of the defective condition of the handle; that the handle broke on account of the brittle, brash and unsound timber from which the same was made; that the decedent was free from contributory negligence.

The point involved, and the one upon which the decision of the case at bar must turn, is: Was Savaie, the carpenter in the employ of appellant at its shops, to whom the business of making and placing the handle in question in the hand car had been entrusted, the vice-principal or representative in this matter of appellant, so that knowledge to him could be imputed to appellant, and whose failure to exercise due care in discharge of the duty delegated to him, would render appellant liable, or was he but a fellow-servant with the deceased in relation to the construction of the car handle?

The following statement of the law pertaining to the relation of master and servant is firmly established by the decisions of this court, and by the courts of last resort in many of our sister States:

That in the contract of hiring, there is an implied

undertaking on the part of the master that he will use all reasonable care to furnish safe premises, machinery and appliances for conducting the business safely, and that he will use all reasonable care to furnish competent and prudent coemployes; but the master, by the contract of hiring, does not become an insurer against injury to the servant. On the other hand, there is an implied undertaking on the part of the servant that he will exercise reasonable care to avoid injury, and that he assumes all ordinary risks incident to the business, and all risks from the negligence of his coemployes. When the master has kept and performed his implied undertaking, the servant can not recover from him for injuries resulting from the business or the negligence of coemployes, however dangerous the business may be. If the servant claims damages from the master for injuries received on account of defective premises, buildings, machinery or appliances, he must allege and prove that the unfitness or defect which caused the injury was known to the master, or was of such a character as that, with reasonable diligence and attention to his business, he ought to have known it. *Lake Shore, etc., R. W. Co.* v. *McCormick,* 74 Ind. 440; *Robertson* v. *Terre Haute, etc., R. R. Co.,* 78 Ind. 77; *Umback* v. *Lake Shore, etc., R. W. Co.,* 83 Ind. 191; *Louisville, etc., R. R. Co.* v. *Orr,* 84 Ind. 50; *Brazil, etc., Coal Co.* v. *Cain,* 98 Ind. 282; *Capper* v. *Louisville, etc., R. W. Co.,* 103 Ind. 305; Thomp. Neg., p. 971; Wood Master and Servant, sections 368-414; *Atchison, etc., R. R. Co.* v. *Wagner,* 33 Kan. 660; *Indianapolis, etc., R. R. Co.* v. *Love,* 10 Ind. 554; *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151.

It is also settled that the duty of the master to furnish his servant with a safe place to work, safe machinery and appliances is a duty of which he can not rid himself by casting it upon an agent, officer or servant employed

Indiana, Illinois and Iowa Railway Company *v*. Snyder, Admr.

by him. The distinction between the negligent perform-
ance of a duty by a servant and the negligent omission
of a duty by the master, is plain and well understood.
Where the duty is one owing by the master, and he en-
trusts it to the performance of a servant or agent, the
negligence of such servant or agent is the negligence of
the master. As the master is charged with the duty of
providing safe and suitable appliances, if he entrusts
such duty to an employe, such employe becomes a vice-
principal, and his negligence in such matter is the neg-
ligence of the master. The rule which absolves the mas-
ter from liability on account of the negligence of a fel-
low-servant has no application to such a case. *Indiana
Car Co.* v. *Parker*, 100 Ind. 181; *Krueger, Admr.*, v.
*Louisville, etc., R. W. Co.*, 111 Ind. 51; *Louisville, etc.,*
*R. W. Co.* v. *Buck, Admr.*, 116 Ind. 566; *Brazil, etc.,*
*Coal Co.* v. *Young*, 117 Ind. 520; *Cincinnati, etc., R. R.*
*Co.* v. *McMullen*, 117 Ind. 439; *Taylor* v. *Evansville, etc.,*
*R. R. Co.*, 121 Ind. 124.

These general and well understood principles of the
law are not disputed by the parties to this suit, but the
controversy arises out of their application.

It is earnestly contended by the appellee that the
knowledge possessed by the carpenter who manufactured
the hand car handle in the shops of the appellant, of
the brittle condition of the wood of which it was manu-
factured, was notice to the appellant which rendered it
liable for the injury out of which this suit originated.
On the other hand, it is contended by the appellant that
such carpenter was only a servant, not charged with the
duty of furnishing safe machinery and safe appliances,
and that his negligence was not the negligence of the
master. It is further contended by the appellant that
its duty to its servants was to furnish a competent in-
spector to inspect such machinery and appliances as

were provided for the use of its servants, and inasmuch as it discharged this duty, and the defect in the handle in question was a latent defect, such as could not be discovered by inspection, that it is not liable.

Keeping in view these principles of law, we will consider their application to the question involved in the case at bar. It appears from the statement of facts herein that the appellant took upon itself the manufacture of the levers or handles of its own hand cars at its shop, which it maintained and operated, by its own agent, employed for that purpose, it being the duty of appellant to provide and maintain safe machinery and appliances, and this was one which it could not delegate to an employe in such a manner as to relieve it from responsibility. The appellant was a corporation, and hence could not discharge this obligation in person, but must provide some agent to take its place, and the person or agent to whom it delegated this duty, no matter what his rank or grade may be, must, by reason, stand in the place and stead of appellant, and can not, in the sense of that word, be considered a fellow-servant so as to exempt the master, under the rule, from liability for injuries incurred by an employe from the negligence of a fellow-servant. This view of the law is fully supported, we think, by some of the decisions of the court heretofore cited, and by others to which we will refer.

In the case of *Wabash, etc., R. W. Co.* v. *Morgan*, 132 Ind. 430, OLDS, J., speaking for this court in regard to the master's duty, said: "So the duty of the master to provide safe machinery and appliances is a continuing one. He must supervise, examine and test his machinery as often as custom and experience require."

In support of this statement of the law, see the following decisions: *Louisville, etc., R. W. Co.* v. *Hanning, Admr.*, 131 Ind. 528; *Cincinnati, etc., R. W. Co.* v. *Roesch,*

126 Ind. 445, and cases cited; *Indiana Car Co.* v. *Parker*, *supra*, and cases cited; *W. C. DePauw Co.* v. *Stubblefield*, 132 Ind. 182.

In the cases of *Louisville, etc., R. W.Co.* v. *Buck, Admr.*, *supra*, it is said that the employe is not bound to search for, or take notice of, latent defects, and that: "These are duties of the master, and unless these defects are such as to be obvious to any one giving attention to the duties of the occasion, the employe has a right to assume that the employer has performed his duty in respect to the implements and machinery furnished."

The same rule is declared in *Little Rock, etc., R. W. Co.* v. *Leverett*, 48 Ark. 333, 3 Am. St. R. 230.

In the case of *Ohio, etc., R. W. Co.* v. *Stein*, 140 Ind. 61, it was said:

Because the foreman of the roundhouse or machine shop at Louisville was in some respects the fellow-servant of appellee, it does not follow that he was so in all respects. In *Indiana Car Co.* v. *Parker, supra*, the court says: "The duty of the employer to provide safe machinery and appliances is a continuing one. 2 Thompson Neg. 984 says: 'But the master does not discharge his duty in this regard by providing proper and safe machinery, or fit servants, in the first instance, and then remaining passive. It is a duty to be affirmatively and positively fulfilled and performed. He must supervise, examine, and test his machines as often as custom and experience require.' * * * Ordinary care requires that a master shall take notice of the liability of the parts of the machinery to decay from age, or wear out by use." The master's duty is a continuing one. When, also, he appoints some other person to perform the duties which are thus owed primarily from himself, then the appointee represents the master; and though in the performance of such duties the appointee may be and

is a servant to the master, yet in these respects, that is —as performing the duties of the master—he is not a co-employe.    Beach Contrib. Neg., sections 349, 356, and notes.  *Mitchell* v. *Robinson*, 80 Ind. 281; *Nall, Admx.*, v. *Louisville, etc., R. W. Co.*, 129 Ind. 260.

The law applicable to the question under consideration is well stated in the case of *Fink* v. *Des Moines Ice Co.*, 84 Iowa, 321 (325), and is as follows:

"It is well settled by all the authorities that the master must provide his servant with a safe place to work in, and furnish him with suitable machinery and appliances with which to perform such work, and it is his duty to keep such machinery and appliances in repair. If he can not do this himself personally, he must provide some other person to take his place, and the person to whom the master's duty is thus delegated, no matter what his rank or grade, no matter by what name he may be designated, can not be a servant in the sense or under the rule applicable to injuries occasioned by fellow-servants.    Such person is an agent, and the rules of law applicable to principal and agent must apply."

In *Flike* v. *Boston, etc., R. R. Co.*, 53 N. Y. 549, the court said, *per* Church, C. J.:

"The true rule, I apprehend, is to hold the corporation liable for negligence  *  *  in respect to such acts and duties as it is required to perform  *  as master  *, without regard to rank or title of the agent entrusted with their performance.    As to such acts, the agent occupies the place of the corporation, and the latter  * should be liable for the manner in which they are performed."

The case of *Fuller* v. *Jewett, Receiver, etc.*, 80 N. Y. 46, is very much in point upon the matter in controversy in the cause now before us.    The defects in the boiler of the engine which the servant of the company was run-

ning at the time of the accident, were due to the negligence of a mechanic in the shops of the railroad company. The master mechanic in charge of these shops did, as it appears, his duty in giving directions for the repairs of the boiler. It was, however, held by the court of appeals that the defendant was liable for the negligence of its mechanic who made the repairs.

In deciding the case the court said:

"We understand the principle of these cases" (referring to cases cited by the court) "to be that acts which the master, as such, is bound to perform for the safety and protection of his employes, can not be delegated so as to exonerate the former from liability to a servant * * to whom the doing of the act, or the performance of the duty has been committed. In either case, in respect to such act or duty, the servant who undertakes, or omits to perform it, is the representative of the master, and not a mere coservant with the one who sustains the injury. The act or omission * of the master, irrespective of the grade of the servant whose negligence caused the injury, or of the fact whether it was or was not practicable for the master to act personally or whether he did or did not do all that he personally could do by selecting competent servants, or otherwise to secure the safety of his employes.

"It is sometimes difficult to determine what is the master's duty within the rule. But when it is ascertained that the negligence by which an employe is injured relates to this duty, then there is no middle ground, and the case can not be determined upon any distinction founded upon the particular grade, office, or function of the negligent servant or agent."

This case is cited with approval in *Northern Pac. R. R. Co. v. Herbert*, 116 U. S. 642.

In the case of *Johnson* v. *Missouri Pacific R. W. Co.*, 96 Mo. 340, 9 Am. St. Rep. 351, the evidence of two blacksmiths that the hammer with which the plaintiff had been injured had not been repaired with reasonable skill was held to be admissible.

The court, in deciding the question raised, said:

"The petition alleges that the hammer in question had been repaired at defendant's own shops, and it was owing to the imperfect and brittle condition and flaws in the hammer negligently furnished him, that plaintiff was injured. Under these averments, the evidence was admissible, and also as bearing upon the question of defendant's knowledge, as to the defective condition of the hammer, the repair of it having been made or done by defendant's agent in its repair shops, thus making the knowledge of the agent the knowledge of his principal." And an instruction was approved which stated that if "the defective and unsafe condition of said hammer was unknown to plaintiff and could not have been known to him by ordinary care or caution on his part, but was known to the defendant, or might have been known by the exercise of reasonable care and diligence on the part of the defendant or its servant or agent who made or repaired it, the jury must find the issue for the plaintiff."

The case of *Moynihan* v. *Hills Co.*, 146 Mass. 586, 4 Am. St. Rep. 348, that court, speaking in regard to the duty of the master to provide and maintain safe machinery and appliances, said:

"It has been repeatedly held that he can not discharge it by delegating the performance of his duty to another (citing cases), and if he employs agents or servants to represent him in the performance of this duty, they are to that extent agents or servants for whose conduct he is responsible. The very nature of the implied contract created by the hiring, whereby he undertakes to use

proper care in always providing safe tools and appliances, is inconsistent with his delegation * to a fellow-servant, for whose negligence he is not to be responsible. His obligation involves the exercise of every kind of care and diligence which is necessary to give him knowledge of the condition as to safety of his machinery and appliances, so far as such knowledge is obtainable by reasonable effort. His duty relates to the condition of these articles when they come to the hands of his servants for use, and the performance of that duty must carry him * so far into details as it is reasonably necessary to go, in view of the risks and nature of the business, to enable him reasonably to protect his servants from a danger which he should prevent.''

See, also, *Louisville, etc., R. R. Co.* v. *Utz*, 133 Ind. 265, and cases there cited.

The Supreme Court of the United States, in the case of *Wabash, etc., R. W. Co.* v. *McDaniels*, 107 U. S. 454, in speaking of the case of *Hough* v. *Railway Co.*, 100 U. S. 213, said:

''It was further said that the obligation of a railroad company, in providing and maintaining, in suitable condition, machinery and apparatus to be used by its employes, is the more important, and its degree of diligence in its performance the greater, in proportion to the dangers which may be encountered; and that 'its duty in that respect to its employes is discharged when, but only when, its agents, whose business it is to supply such instrumentalities, exercise due care as well in their purchase originally as in keeping and maintaining them in such condition as to be reasonably and adequately safe for use by employes.' ''

Bishop, in his valuable work on Non Contract Law, sections 664, 665 and 668, says: ''The duty to provide and maintain safe machinery is a 'non assignable

duty.' The employer must perform it, and whosoever performs it for him is, as to that duty, a vice-principal, although as to all other duties that person may be a co-employe.'' *Justice* v. *Pennsylvania Co.*, 130 Ind. 321.

We presume that it could not be successfully contro-verted that if, in the case at bar, Savaie, as the employe of appellant, had been entrusted by it to purchase and furnish the appliances or machinery required by the company in conducting its business, and if, in the dis-charge of this duty, he had failed to exercise due care, or had actual notice of the fact that the appliances or ma-chinery were defective and unsafe, then the appel-lant would be required to respond for his negligence. Then wherein, under the facts in this case, lies the dis-tinction? If any, we fail to recognize it. Savaie ap-pears to have been put in control, by appellant, of the work of preparing these levers or handles, including the one in question, and as to this special matter, he must have been the representative of the company, and, there-fore, in the eye of the law, notice to him acquired in the line of this duty of the defects in the handle, would be notice to his employer. *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261.

In the case of *Pittsburgh, etc., R. W. Co.* v. *Ruby,* 38 Ind. 294, this court said: ''We think that notice to an agent of a corporation relating to any matter of which he has the control and management, is notice to the cor-poration.''

The rule in regard to special agents is that, as to the special matter over which his authority extends, he may bind his principal as fully as a general agent can do. *Cruzan.* v. *Smith,* 41 Ind. 288; *Toledo, etc., R. W. Co.* v. *Owen,* 43 Ind. 405; *Cleveland, etc., R. W. Co.* v. *Closser,* 126 Ind. 348 (365).

Under the facts in this cause, and the reasoning of the many authorities which we have cited, we think that the conclusion is irresistible that the carpenter, in the making and placing of the handle in controversy in the hand car, was, under the circumstances, in this respect, and in relation to this matter or duty, the representative of appellant, and as to this he was a vice-principal, and not a fellow-servant with the deceased, and that notice to him of the defects in the handle, obtained in the construction thereof, was notice to appellant, and that the latter is liable for his negligence in the premises.

Appellant's learned counsel place much stress upon the fact that the lumber out of which the car handle was constructed, was inspected before it went into its shops, and found to be clear and free from knots. An inspection is but the means employed by the master to discover defects. However, if, as in this case, he obtains notice through another representative agent of the insufficiency of the appliances in time to remedy the same, then the fact that an inspection was made by another of his agents and nothing as to the defectiveness in question ascertained, would not be available in favor of the master. Where there is actual knowledge, the matter of inspection is not controlling. In support of its contention appellant cites *Columbus, etc., R. W. Co.* v. *Arnold, Admr.*, 31 Ind. 174.

In the case of the *Indiana Car Co.* v. *Parker, supra,* the extreme doctrine maintained in that case was not approved, and the same still meets with the disapproval of this court.

The evidence in this case fully supports the judgment, and the special findings of the jury are not antagonistic to the general verdict.

Some other questions are referred to by appellant's

counsel in their brief, but are not discussed, and, therefore, we can not consider the same.

Finding no available error, the judgment is affirmed, at the cost of appellant.

