# THOMPSON ET AL. *v.* THE MICHIGAN MUTUAL LIFE INSURANCE COMPANY.

[No. 8271.   Filed June 23, 1914.]

1.  APPEAL.— *Record.— Bill of Exceptions.— Identification.*— While the file mark of the clerk stamped on a bill of exceptions is insufficient to properly identify it and make it a part of the record, such file mark may be considered in connection with the order-book entry and the judge's certificate as a means of identifying the bill.   p. 505.

2.  APPEAL.—*Record.—Bill of Exceptions.— Identification.*— Where the order-book entry showed the filing of a bill of exceptions on January 5, 1912, and the certificate of the judge showed that the appellant presented its bill of exceptions on December 21, 1911, and that on January 5, 1912, the bill of exceptions heretofore taken under advisement had been examined and found to be true and correct, and that the same is now "signed, sealed and made a part of the record", and the bill of exceptions containing the evidence and the certificate of the judge bore the clerk's file mark of January 5, 1912, and it appeared that a bill of exceptions containing the instructions was not presented to the court until January 6, 1912, the identification of the bill containing the evidence was sufficient to make it a part of the record on appeal. p. 505.

3. APPEAL.— *Subsequent Appeal.— Law of the Case.*— Where the issues are the same as they were on a former appeal of the same case, the decision on such former appeal is the law of the case, if the facts are in all essentials the same. p. 507.

4. APPEAL.— *Review.— Law of the Case.— Authority of Agent.*— Although the affidavit of defendant's agent, made in verification of defendant's answer, in which it was stated that he was the general agent of defendant during the time of the transactions relating to a policy of insurance in suit, constituted some proof that he was such general agent, where it appears that the same proof was made at the first trial, though not mentioned in the opinion on the former appeal, the holding of the court on such former appeal that such agent was merely a local agent, without authority to appoint subagents, remains the law of the case in the absence of new material evidence tending to prove a greater authority. p. 508.

5. INSURANCE.—*Evidence of Agency.*—Evidence that an insurance agent had business relations with other persons whereby they solicited business for the company, and that the State agent knew of the work of such persons and had gone over applications procured by them in the office of such agent, does not show the authority of such agent to be that of a general agent. p. 508.

6. PRINCIPAL AND AGENT.—*Appointment of Subagent.*—An agent without authority to appoint a subagent can not ratify the acts of his appointee so as to bind his principal. p. 509.

7. APPEAL. — *Subsequent Appeal. — Questions Concluded. — Local Agent.—"Local".*—The holding on a former appeal that defendant's agent was a local agent is not conclusive that he was not a general agent, since the term "local" only signifies a limitation as to territory, but not of authority in the particular business intrusted to the agent within his territory. p. 509.

8. PRINCIPAL AND AGENT.—*"General Agent".—"Special Agent".*—A "general agent" is one who is authorized to transact all the business of his principal, or all his business of some particular kind, or at some particular place, while a "special agent" is one who is authorized to do one or more specific acts, in pursuance of particular instructions or within restrictions necessarily implied from the act to be done; but their powers are alike in that each may do anything within the scope of his agency so as to bind the principal. p. 509.

9. INSURANCE.—*Life Insurance.—Authority of Agent.*—The local agent of a life insurance company, in the absence of special limitations on his authority of which persons dealing with him have notice, express or implied, may bind the company by his acts with reference to things usually incident to the business transacted by such agents. p. 510.

10. INSURANCE.— *Liability of Companies.—Agents.*— An insurance company is responsible, not only for the acts of its agents within the scope of their agency, but also for the acts of the agent's clerks when it knows or ought to know that such agent has persons in his employ to assist in discharging the duties of his agency. p. 510.

11. INSURANCE.—*Action on Life Policy.—Jury Question.*—In an action on a life policy involving the question of the agent's authority to employ the person who procured the application for the policy sued on, where the evidence was such as to show actual knowledge on the part of the company that such agent employed assistants, and accepted applications procured by them, such evidence together with conversations between such agent, such employe, and the husband of insured relative to the return of the premium if the policy was not issued, should have been submitted to the jury on the question of whether the payment of the premium was a payment to the company. p. 511.

12. TRIAL.—*Jury Question.—Evidence.*—Where the evidence supplies reasonable grounds for inferring the facts authorizing a recovery it should be submitted to the jury. p. 511.

13. INSURANCE. — *Life Insurance. — Policies. — Delivery.* — Where there was evidence to show that the premium for a life policy was paid to an authorized agent while the insured was in good health and the policy was received by such agent for delivery before the insured's condition had changed, the policy went into effect notwithstanding there was a provision in it that it should not take effect unless the insured was in good health at the time of delivery and payment of the first premium. p. 513.

From Superior Court of Vanderburgh County; *F. M. Hostetter,* Judge.

Action by Clifton Thompson and others, by Charles Thompson, their next friend, against the Michigan Mutual Life Insurance Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Lane B. Osborne, Thomas Van Buskirk* and *George K. Denton,* for appellants.

*John E. lglehart, Edwin Taylor, E. H. Iglehart* and *George D. Heilman,* for appellee.

FELT, C. J.—Suit upon a life insurance policy alleged to have been issued on the life of Lulu Thompson, deceased. This is the second appeal of the case. *Michigan Mut. Life*

*Ins. Co.* v. *Thompson* (1909), 44 Ind. App. 180, 86 N. E. 503.

The complaint alleges full performance of the conditions of the insurance contract on the part of the insured, and of appellants, her children, who were named as beneficiaries. Issues were joined by a general denial. At the close of the appellants' evidence the court sustained appellee's motion for a peremptory instruction directing a verdict in its favor. A verdict was returned in accordance with such instruction and the action of the court in so instructing the jury is assigned as cause for a new trial. The motion was overruled and this action of the court is the error assigned and relied on for reversal.

Appellee contends that the bill of exceptions containing the evidence is not in the record for the reason that there is no order book entry which properly identifies it and shows its filing; that the file mark of the clerk stamped on the bill is insufficient to properly identify it and make it a part of the record. The file mark alone is insufficient for such purpose. *Hoffman* v. *Isler* (1912), 49 Ind. App. 284, 286, 97 N. E. 188; *Rector* v. *Druly* (1909), 172 Ind. 332, 88 N. E. 602. In this case however there is an order book entry though it is not as definite and specific in the identification of the bill as it should have been. The order book entry made on January 5, 1912, shows the filing of the "bill of exceptions herein which was heretofore signed and sealed by the court."

The certificate of the judge shows that the appellants presented their bill of exceptions on December 21, 1911, and prayed that the same be signed, sealed and made a part of the record. On January 5, 1912, the judge made another certificate which is also attached to the bill and shows that "the bill of exceptions heretofore taken under advisement" had been examined by him and he certifies that the same is true and correct; that it contains all the evidence given in said cause and all objections and rulings thereon "and

the same is now here signed, sealed and made a part of the record, this 5th day of January, 1912.'' The bill of exceptions and the certificate of the judge bear the file mark of the clerk of date January 5, 1912, and though such file mark alone is insufficient to identify the bill, it may nevertheless be considered in connection with the order book entry and the judge's certificate as a means of identifying the bill. Bill of exceptions No. 2 containing the instructions was not presented to the court until January 6, 1912, and could not therefore have been referred to in the order book entry of date January 5, 1912. Considering the order book entry, the certificate of the judge, the dates and the whole record, there is no uncertainty that the bill of exceptions mentioned in the order book entry showing the filing of appellants' bill of exceptions is the bill of exceptions containing the longhand manuscript of the evidence in this case.

The principal facts of the case are stated in the former opinion and will not be repeated here except where necessary to a decision of the questions presented by this appeal. Both the application and the policy provide that the contract shall not take effect unless the first premium is paid and the insured is in good health at the time of the delivery of the policy.

In the former opinion it is said: ''The validity of the policy depends upon two conditions: (1) Whether the first premium was paid to any agent of appellant authorized to receive it; (2) whether, at the time it was delivered to appellant's agent at Evansville, the insured was in good health.'' On the facts of the case as presented on the former appeal, this court held that one Veatch, who procured the application for the insurance, was the agent of the insured, but said: ''Had the appellant received the money, or had knowledge of its payment and acted upon the application, under the authorities cited by appellees, it would have made Veatch its agent by ratification.'' The court also held that ''Whether, upon a given state of facts, a person

is or is not an agent of another, is a question for the court'', and on the facts as presented held that one Tate who resided at Evansville was local agent of the Michigan Mutual Life Insurance Company for Vanderburgh County without authority to appoint another agent.

On the facts of the case as now presented, appellants contend that there is evidence which warrants the finding or inference (1) that Tate was a general agent with authority to employ subagents; (2) that payment of the premium was made to Veatch who was an authorized agent of appellee to receive the same by virtue of his arrangement with Tate; (3) that by acting on the application secured by Veatch the Company made him its agent and can not deny his authority in this transaction; (4) that the insured was in good health when the policy reached the office of Tate, the agent of the company, at Evansville.

Appellee contends that the issues of the case are the same now as on the former appeal and that the decision on that appeal is the law of the case and compels an affirm-

3. ance of the judgment. The proposition of law is not disputed provided the facts are in all essentials the same, but appellants claim there are material differences in the facts proven, or which may properly be inferred from the evidence offered on the second trial. There is no dispute that Veatch procured a blank application from Tate; that he took the application of the insured and collected from her husband an amount of money sufficient to pay the first premium on the policy; that Veatch attested the signature of the insured on the application; that he delivered it to Tate who forwarded it to the company; that the company approved the application and on April 12, 1900, issued the policy in suit on the life of the decedent; that the policy was received at the office of Tate, the agent of the company, at Evansville during business hours of April 14, 1900; that the insured died on April 21, 1900.

In the former suit by Charles Thompson against appellee

on the same insurance policy, appellee filed the affidavit of James B. Tate in verification of an answer in which he stated that he was the general agent of appellee during all the time covered by the transactions relating to said policy. It appears that said Thompson, who was the husband of the insured, did not know for a long time after the death of his wife that the policy had been issued and sent to the office of Tate and that when he did learn that fact he was unable to procure the policy, but brought suit in his name. Later on he learned that his children were named as beneficiaries and he thereupon dismissed his suit and brought this action as above stated. This affidavit was admitted in evidence and is some proof that Tate was the general agent of appellee at Evansville. However, the same proof was made at the first trial, and is shown both by the record and the briefs of the former appeal, but the fact is not mentioned in the opinion, though certain facts are enumerated upon which the court holds that Tate was only a local agent and did not have authority to appoint subagents. This conclusion is still the law of the case unless upon the second trial there was material evidence not heard at the first trial, which tends to prove that Tate was an agent of appellee with authority to employ subagents. *Catholic Order of Foresters* v. *Collins* (1912), 51 Ind. App. 285, 99 N. E. 745; *Indianapolis, etc., Transit Co.* v. *Reeder* (1912), 51 Ind. App. 533, 537, 100 N. E. 101; *Fort Wayne Iron, etc., Co.* v. *Parsell* (1912), 49 Ind. App. 565, 576, 94 N. E. 770.

Evidence was received at the last trial to show that Tate had business relations with two other persons, in transactions similar to that of his dealings with Veatch in this instance, about the time Veatch procured the application from Mrs. Thompson on which the policy in suit was issued, and that appellee's state agent knew of their work and had gone over applications with such other brokers in Tate's office. We can not, however, see that this

evidence tends to show an agency on the part of Tate different from that declared in the former opinion, or that he had authority to employ Veatch as an agent of the company. If he had no power to employ him as such agent he could not ratify his acts so as to bind the company. There is evidence to the effect that on two or three occasions after Tate received and forwarded the application of Mrs. Thompson, early in March, and before April 14, Veatch and Thompson went to the office of Tate in Evansville to inquire if the policy had come, and that Tate said "We are looking for it every day"; that Veatch said Mr. Thompson wants to know about the money he has paid and Thompson said to Tate that the policy was a long time coming and he would like to have his money back if it was not coming and thereupon Tate said to him, the money is all right and if the policy doesn't come you will get your money back.

The former opinion declares on the facts then before the court that Tate was a local agent. The fact that he was a local agent does not determine whether he was a general or a special agent, for a local agent may be either a general or special agent. The term local only signifies a limitation as to territory but not of authority in the particular business entrusted to an agent within his territory. *Fatman* v. *Leet* (1872), 41 Ind. 133, 138; *Cruzan* v. *Smith* (1872), 41 Ind. 288, 298; *Toledo, etc., R. Co.* v. *Owen* (1873), 43 Ind. 405, 409; 31 Cyc. 1338, 1339 and notes. In 31 Cyc. 1339, in speaking of general and special agents it is said: "Their powers, when properly analyzed, however, are governed by the same general principles, to-wit, they can do anything within the scope of their agency so as to bind the principal." In *Cruzan* v. *Smith, supra,* on page 297 the court quotes with approval the following: " 'A general agent is one who is authorized to transact all the business of his principal, or all his business of some particular kind, or at some partic-

ular place. * * * The authority of an agent being limited to a particular business does not make it special; it may be as general in regard to that, as though its range were unlimited. *Anderson* v. *Coonley* [1839], 21 Wend. *279. A special agent is one who is authorized to do one or more specific acts, in pursuance of particular instructions or within restrictions necessarily implied from the act to be done'. * * * Story, in his work on Agency, states the law thus: 'Whatever acts are usually done by such class of agents, whatever rights are usually exercised by them, and whatever duties are usually attached to them, all such acts, rights, and duties are allowed to be incidents to the authority confided to them in their particular business, employment, or character.' '' In *Toledo, etc., R. Co.* v. *Owen, supra,* it is said: "That the authority of an agent is limited to a particular kind of business does not make him a special agent."

By the former decision and by the undisputed facts of this case, Tate was the agent of appellee to transact its insurance business at Evansville, and as such agent he had authority to do such things incident to the business, as are usually done by local insurance agents, unless his authority was specially limited, and any limitations of such authority not ordinarily obtaining in the case of such agent would not be binding upon third parties dealing with him as such agent, unless they had notice, express or implied, of such limitations. *Indiana, etc., R. Co.* v. *Snyder* (1895), 140 Ind. 647, 660, 39 N. E. 912; *Cruzan* v. *Smith, supra,* 297, 299.

In *Indiana Ins. Co.* v. *Hartwell* (1890), 123 Ind. 177, 192, 24 N. E. 100, it is said: "Insurance companies are not only responsible for the acts of their agents, within the scope of their agency, but also for the acts of the agent's clerks, when the company knew as it ought to have known, that other persons would have been employed by and to act for the agents. Insurance brokers are the

agents of insurance companies for the purpose of delivering policies and collecting premiums. In *Duluth Nat. Bank* v. *Knoxville Fire Ins. Co.* [1886], 85 Tenn. 76, [1 S. W. 689] (4 Am. Rep. 744), the court said: 'Not only is the insurer responsible for the acts of its agent within the scope of his agency, but for all the acts of its agent's clerks, or any person to whom he delegates authority to discharge his functions for him. Of course the act must be done by some person authorized expressly, or impliedly by the agent, and under such circumstances that the insurer knew, or ought to have known, that other persons would be employed by and to act for the agent.' See Wood, Fire Ins. §409.''

Conceding that the evidence does not show that Tate had authority to appoint subagents to bind the company, and that if he could not appoint such agents he did not have the power to ratify the acts of such agent so as to bind the company, still in the nature of the business conducted by Tate, the company must have known that he would have persons to assist him in his work. In this connection the evidence that the state agent knew personally of the work of two brokers, or assistants of Tate, about the time of this transaction, though insufficient to show Tate's power to appoint subagents, is sufficient to show not only constructive, but actual knowledge on the part of the company, that Tate did have assistants, and did recognize and use the applications taken by them and obtain policies from the company thereon. The conversations between Thompson, Veatch and Tate in regard to the policy and the money afford some evidence that should have been submitted to the jury on the question of the payment of the first premium by the insured. In a civil suit it is sufficient to require the submission of questions of fact to the jury, that the evidence supplies reasonable grounds for inferring the facts which if found by the jury will warrant a recovery. *Riehl* v. *Evansville Foundry Assn.* (1885), 104 Ind. 70, 74, 3 N. E. 633; *Abelman* v.

*Hachnel* (1914), 57 Ind. App. —, 103 N. E. 869. So far as shown by the evidence, the only compensation to Veatch from either party was a share of the commission due Tate as a local agent for procuring the application. Veatch had previously written some fire and accident insurance for which Tate paid him a part of the commission when the premium was paid, and they had some exchanges of business but not in relation to insurance in the Michigan Mutual Life Insurance Company. While standing alone and unaided, payment of the premium to Veatch would not be binding on the company, the jury would have the right to infer from the evidence aforesaid, either that Tate had previously received the money from Veatch, or that with full knowledge of all the facts, under some arrangement between him and Veatch, Tate treated the payment to Veatch as payment to him, the authorized agent of the company. When Thompson called on him for the policy or the money in the presence of Veatch, and when Veatch in one of the conversations said to Tate that Thompson was anxious about the money he had paid for the first premium, if Tate did not regard the money as paid to him, or fully within his control, it would seem to be but reasonable and natural under such circumstances, for him to have said in substance that Veatch had his money and he must look to him. But when instead of doing this he repeatedly assured Thompson that his money was all right and he would either get the policy or his money back, it can not be said that there was no evidence from which the jury might not reasonably infer payment of the first premium to Tate and payment to him would be binding on the company. Notwithstanding the provisions of the policy in regard to the payment of the first premium in cash to the company or its "authorized agent", if Tate, its agent at Evansville, after sending the application to the company and before receiving the policy, when asked about the policy and the money that had been paid by the insured, either expressly or impliedly acknowledged payment by the

insured or some one representing her, or treated the payment that had been made as payment to him and assumed control of the money so paid, we can not say there was a total failure of evidence to show payment of the premium to the company or its "authorized agent". *Terry* v. *Provident Fund Soc.* (1895), 13 Ind. App. 1, 8, 41 N. E. 18, 55 Am. St. 217; *Home Ins. Co.* v. *Gilman* (1887), 112 Ind. 7, 13 N. E. 118.

On the question of the health of the insured when the policy reached Tate's office there was ample evidence to require the question to be submitted to the jury.

13. There is evidence to show that the policy was delivered at Tate's office not later than about 4 p.m. on April 14, and there is other evidence from which the jury might have found that it was delivered at a much earlier hour in the day. There is also evidence to show that Mrs. Thompson was in good health on April 14, until some time in the evening between six and eight o'clock when she began to suffer from the bite of a spider and a physician was called to see her.

On the question of the delivery of the policy the former opinion in this case on page 185 holds that: "The receipt by an agent from his insurance company of a policy to be unconditionally delivered by him to the applicant is, in law, tantamount to a delivery to the insured, though the agent never surrenders possession of the policy, and though its delivery to the applicant is by contract made essential to its validity. *Neff* v. *Metropolitan Life Ins. Co.* (1906), 39 Ind. App. 250, [73 N. E. 1041] and cases cited; *Yonge* v. *Equitable, etc., Society* (1887), 30 Fed. 902; 1 May, Insurance (4th ed.) §60." The only conditions in reference to the delivery of the policy are those shown in the former opinion and contained in the policy itself, viz., that the first premium be paid in cash and that the insured be in good health when the policy is delivered. There is evidence tend-

Vol. 56—33

ing to prove both these propositions. Its sufficiency and weight are questions for the jury. If the premium had been paid to an authorized agent before the policy was received at Tate's office, and if when so received Mrs. Thompson was in good health, the policy in legal contemplation, was then delivered and binding on the company, for the insured had then met all the conditions imposed on her. The minds of the contracting parties had met and the failure of the local agent to make the manual delivery of the policy could not operate to defeat a binding contract.

For the error of the court in directing a verdict for appellee the judgment is reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 105 N. E. 780. As to agency to make sales, and whether it includes authority to receive payments, see 47 Am. Rep. 519. As to the conclusiveness of prior decisions on subsequent appeals, see 34 L. R. A. 321. As to the effect of stipulation in application or policy of life insurance that it shall not become binding unless delivered to assured while in good health, see 17 L. R. A. (N. S.) 1144; 43 L. R. A. (N. S.) 725. See, also, under (1, 2) 3 Cyc. 108; (3, 4) 3 Cyc. 395; (5) 22 Cyc. 1429; (6) 31 Cyc. 1251; (7) 3 Cyc. 399; (8) 31 Cyc. 1205; (9) 22 Cyc. 1433; (10) 22 Cyc. 1431; (11) 25 Cyc. 947; (12) 38 Cyc. 1532; (13) 25 Cyc. 722.