THE METROPOLITAN LIFE INSURANCE COMPANY v. ANNIE McTAGUE.

When a life insurance policy has become forfeited by non-payment of premiums, and a "revival application" is made, asking that the policy be revived, and containing representations as to the insured during the period between the issuing of the policy and the date of the revival application, and a warranty that such representations (as well as the representations of the original application) are true, and that otherwise the insurance will be void, and containing also an agreement that the liability of the insurer is not to exist until the revival is assented to, and when the insurer afterward assents, by a written approval, of the revival application—*Held*,

1. That upon such assent the original contract, with all its terms, became reinstated, and there was also incorporated into the contract which then arose the new terms expressed in the revival application, and thereby the representations therein contained became part of the contract, and the truth of each was warranted.

2. That a statement in the revival application that insured had not, during the period covered thereby, been "sick or afflicted with disease," was not necessarily to be inferred to be false from the fact that insured had had "a cold."

3. But a statement that insured had not "consulted, or been prescribed for by a physician," was shown false by proof of such a prescription, although it appeared to have been given for "a cold," and the nature of the prescription did not appear.

---

On *certiorari* bringing up a judgment of the Essex Common Pleas on appeal from a District Court.

Argued at February Term, 1887, before Justices VAN SYCKEL, MAGIE and PARKER.

For the prosecutor, *Jos. A. Beecher.*

For the defendant, *Frank E. Bradner.*

The opinion of the court was delivered by

MAGIE, J.    The action in the District Court was founded on a policy of life insurance, dated April 14th, 1884, whereby the Metropolitan Life Insurance Company agreed, if certain premiums were paid, to pay to Annie McTague a certain sum on the death of John McTague, her husband.

The judgment of the District Court was in favor of Annie McTague, and it was affirmed on appeal.

It appears by the state of the case that the policy in question originally issued upon the application of Annie McTague. It was averred in the policy that the contract was made in consideration of the representations contained in the application, which was therein " referred to, and made part of this contract."    The policy further stipulated that if the representations were not true the contract should be void.

By force of these stipulations the application and the representations thereby made were incorporated into the completed contract of insurance, and the truth of the representations was warranted.    If false, although in immaterial particulars, the contract would be avoided.    *Dewees* v. *Manhattan Ins. Co.,* 5 *Vroom* 244; *Carson* v. *Jersey City Ins. Co.,* 14 *Vroom* 300; *S. C.,* 15 *Vroom* 210 ; *Cushman* v. *United States Life Ins. Co.,* 63 *N. Y.* 404; *Phœnix Mut. Life Ins. Co.* v. *Raddin* ( *U. S. Sup. Ct.*), 23 *Rep.* 12 ; *MacDonald* v. *Law Union Ins. Co.,* *L. R.,* 9 *Q. B.* 328.

The contract thus made became forfeited by the failure to pay the weekly premiums as agreed.    Afterward, and on February 12th, 1885, Annie McTague signed and delivered to the company a written application called a " revival application."    It described the forfeited policy, admitted that the weekly premiums had remained unpaid for thirty-one weeks, and contained the following, viz. :  " The undersigned assured hereby declares and warrants that the life heretofore insured

under the above-numbered policy has not, since said policy was issued, been sick, or afflicted with any disease, or met with any accident, or consulted or been prescribed for by any physician, and that the habits of said insured are sober and temperate. Said policy having lapsed, the undersigned desires to renew the same, and herewith pays the premiums in arrears, with the understanding that no liability exists on the part of the company, until said company, at its home office, in New York city, shall have assented to the revival of said policy, and so notified its agent first above named ; nor shall said policy be deemed to be in force unless, upon the date of its revival by the company, at its home office as aforesaid, the said insured shall be alive, and in sound health. It is further warranted that the statements in this and the original application are, in all respects, true, otherwise the insurance will be void, and all payments made will be forfeited to the company." The company assented to the revival of the policy by an approval of the revival application annexed thereto, and signed by one of its officers. It notified the agent referred to, and received the premiums in arrears, and those which subsequently fell due up to the death of John McTague, which occurred September 9th, 1885.

It now disputes its liability upon the policy on the ground that statements contained in the revival application were untrue. The question thus raised requires us to determine what contract existed between the parties after the policy was revived and the relation to that contract of the revival application and its representations.

The forfeiture of such a policy by non-payment of premiums may be waived, and such waiver will generally be inferred from a receipt of the premiums after forfeiture. Upon such a waiver the pre-existing contract doubtless becomes reinstated upon its original terms. Such a forfeited policy may also be expressly revived, and in such case the revival may be upon such terms and conditions as the parties agree to. When an express revival is made upon the statements of the original application, it has been made a question whether the truth of

those statements is to be tried by the circumstances existing at the time of the original application or at the time of the revival. *Bliss on Life Insurance*, § 194. Mr. May says that the authorities do not agree, some taking the view that a renewal makes a new contract, and others that it merely continues the old one. He expresses his opinion that special circumstances seem to control the decision according as they indicate the intent of the parties. *May on Insurance*, § 190.

In like manner the parties may doubtless agree to revive the lapsed contract upon new terms and conditions, or upon its original terms and conditions with such additional terms as they mutually agree to incorporate therewith. Whether the parties merely reinstate the old and forfeited policy, or create a new contract on new terms, or revive the lapsed contract with additional terms, must be determined from the circumstances. In the case before us it is clear, in my judgment, that the intent of the parties was to revive the forfeited policy with all its original terms by a new contract which incorporated into it additional terms. This appears from the circumstances. The original policy was based on a written application containing statements as to the insurability of the person whose life was to be insured. These statements were expressly incorporated into the contract and warranted to be true. When forfeiture had occurred, the beneficiary in the lapsed contract applied in writing for its revival. The application contained statements as to the insurability of the person whose life was insured, covering the period between the issuing of the original policy and the date of the revival application. It further contained an agreement that the company's liability should only re-arise upon its assent to the application. It contained an express warranty of the truth of the representations then made, and an agreement that if they or the representations of the original application were not true the contract should be void. This written application was assented to by the written approval of the company, and thereby a new contract between the parties was made, reviving the old policy with all its terms, and incorporating into it the additional terms expressed in the

revival application. By these means the representations con-tained in the revival application became part of the completed contract between the parties, and their truth was warranted. The falsity of any of them will avoid the contract.

Two representations in the revival application are alleged to have been false. The first was that which averred that John McTague had not, since the policy was issued, been " sick or afflicted with any disease." The District Court found as a fact that he had, during that period, had " a cold." The Com-mon Pleas held that the statement of the application was not thereby shown to be untrue. In this I think there was no error. There was nothing in the mere fact found that required the inference that the insured life had been " afflicted by dis-ease " or even " sick." These terms are not to be construed as importing an absolute freedom from any bodily ailment, but rather of freedom from such ailments as would ordinarily be called disease or sickness. Where a lapsed policy was renewed on condition that the insured was in good health, it was held that the phrase was not to be construed as meaning an absolute exemption from any physical ill ; and as the policy had issued on an application showing the then state of health of the insured, it was further held that the condition was satisfied by the insured being in a state of health relatively like that represented in the original application. *Peacock* v. *New York Life Ins. Co.*, 20 *N. Y.* 293. See, also, *Cushman* v. *United States Life Ins. Co.*, 70 *N. Y.* 77. Whether this view be approved or not, I am of opinion that in the absence of proof that the " cold " referred to produced disease or sickness, the courts below rightly held that the falsity of the statement in question was not shown. Nor do I think that the fact that the insured had been prescribed for by a physician necessarily required the inference that the cold produced either disease or sickness.

The other statement alleged to be proved false is that which averred that John McTague had not, within the period between the issuing of the policy and the date of the revival applica-tion, " consulted or been prescribed for by a physician." The

fact found by the District Court was that a physician had been called on by John McTague, or had visited him, and had prescribed for him, for the "cold." The Common Pleas, in their opinion before us, declare that this fact did not show the representation to have been false, because it did not appear what sort of a prescription the doctor gave, whether one compounded by a druggist or made up of some common remedy. But it is obvious that this circumstance cannot be of the least importance in determining the truth or falsity of the representation in question. That representation did not aver a condition of health, or that it was requisite or proper to consult a physician. It averred that he had not consulted a physician or been prescribed for by a physician. The fact found contradicted this averment, whether the consultation and prescription related to a real disease or an apprehension of disease. Indeed, so material does such a representation seem to be to the contract proposed by the application that, in my judgment, if made falsely and knowingly, it would avoid the contract. But the materiality of the representation in this case is not in question, for, as we have seen, its truth is warranted. Its falsity appears from the fact found.

The result is that the contract was avoided, and the court below erred in rendering judgment thereon. The judgment must be reversed.

Owing to his engagements in Circuit, Justice Parker took no part in this decision.