GEORGIANA DOREY, administratrix, *vs.* METROPOLITAN
LIFE INSURANCE COMPANY.

Bristol.    October 26, 1898. — November 23, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Life Insurance — Law and Fact — Instructions — Exceptions.*

If the only issue at the trial of an action upon a policy of life insurance is whether
or not the assured was in sound health at the date of the policy, and the evi-
dence for each party, if believed, would warrant a verdict for such party, a
pure question of fact, and not of law, is raised, and a request for a ruling that,
upon the whole evidence, the plaintiff is, not entitled to recover, is rightly
refused.

No exception lies to the refusal to give an instruction in the language requested, if
it is given in substance.

CONTRACT, by the administratrix of the estate of Orissime
Dorey, upon a policy of insurance issued by the defendant on
the life of the intestate.    Trial in the Superior Court, before
*Fessenden*, J., who allowed a bill of exceptions, in substance as
follows.

The plaintiff's intestate died at Fall River on February 8,
1897.    By the terms of the policy, which was dated May 13,
1895, the defendant promised to pay to any one of certain per-
sons therein named, upon certain conditions, the sum of $500,
provided that the insured was at the date of the policy alive and
in sound health.    The defendant contended that, at the date of
the delivery of the policy, the insured had the disease cystitis,
and was not in sound health, and the case was tried upon the
issue whether or not he was then in sound health.

The plaintiff, who was the widow of the insured, testified that
she lived with her husband at Newburyport; that at the date
of the policy he was in good health; that he worked every day
in the winter time at chopping wood, and in the summer on a
stone crusher; that in the early part of May, 1895, he was work-
ing at cutting wood, and in the latter part of that month he
worked at a stone crusher; that up to the time he was insured
he had never been kept at home by any sickness; that in the
summer of 1895 he was sick five weeks, and Dr. Day attended

him at the house, beginning the last of June or first of July; that they moved to Fall River in October, 1895; that her husband was sick, saying that he had strained himself in the lower part of his body in raising a very large stone at his work; that all through June of that year he worked at the stone crusher; that when he was sick he had trouble passing his water; that before June, 1895, he never complained to her of any trouble with his water, and she had never known of his having any such trouble; and that she could not remember any person for whom he had worked after coming to Fall River.

Mary Bray, a daughter of the intestate, testified for the plaintiff that in May, 1895, she lived in the next half of the house occupied by her father and mother, and she saw her father every day, and his health was good; that he appeared very well and always worked; that his health at the time of his insurance was good; that the winter before he chopped wood, and in May he worked at the stone crusher; that she first heard him complain, after he was insured, about the last of June, 1895; that after that he did no work except the housework; and that the injury at the stone crusher was in the last part of June.

Fred Dorey, a son, and Charles H. Bray, a son in law of the intestate, testified to the same effect.

Mrs. Selina Carrier testified that she lived near the intestate in Newburyport, and used to call at his house and see him about every day; that in 1895 his health was good; that he worked at chopping wood, and doing all kinds of work, also at a stone crusher; and that she had known him eight years.

Joseph Dorey, a son of the intestate, testified that at the time of his insurance his father's health was good; that when he worked at the stone crusher that summer, the witness carried his dinner to him, and saw him lift large stones; that he took his dinner the day his father was injured; that then his father complained of pain, but before that he had never complained of illness or pain; that this was after May 13, 1895; that his father's work at the stone crusher was very hard; and that, after his father left on account of the accident, two men were employed to take his place.

Dr. Edward P. Hurd, called as a witness by the defendant, testified that he had been a practising physician since 1865;

that he knew Orissime Dorey and had attended him profession-ally; that he remembered distinctly attending him early in July, 1895, and thought he had attended him prior to that; that according to the best of his recollection there was trouble with Dorey in 1894; that his memory was deficient in regard to the matter; that he had an impression that he gave Dorey a gum catheter, but could not say whether it was in 1894 or 1895, because he had no dates; that his memorandum said he made a visit on March 16, 1895; that he distinctly remembered that Dorey was very sick with cystitis on July 3, 4, and 5, 1895; that his memorandum did not refresh his memory in regard to 1894, except the impression that he had been consulted for a specific trouble, and had prescribed for it; that he thought the trouble was the same for which he saw him in 1895, which was a stricture of the urethra and prostatis; that he never attended Dorey for anything but urinary trouble; that on July 3, 4, and 5, 1895, he had a great stricture and was suffering a great deal; that "we regard it as chronic, that means some duration, not acute trouble that would come on recently"; that this trouble comes on insidiously, with very slight symptoms at first, which gradually increase; that a man who has cystitis is not in sound health; and that, in the witness's opinion, it was not curable in a man of Dorey's age.

On cross-examination the witness testified that cystitis comes on quite gradually, and when it is well developed a man cannot work; that a man might have the first stages of it and do a good deal of hard work; and that "it is not incompatible with the amount of work a man in sound health might do, that is, for a time, until it is developed beyond a certain stage," but the "man is always suffering."

Dr. Clarence C. Day, called as a witness by the defendant, testified that he was a practising physician and had known and attended Orissime Dorey; that his first attendance was in February, 1894, at his office; that he was not positive what it was for, but thought for some urinal disturbance; that his next attendance was at his office on May 18 and 21, 1895, when Dorey complained of considerable trouble with his water; that the witness at that time formed an opinion of what the trouble was; that in his opinion Dorey was suffering from some obstruction

to the flow of water, either stricture or enlarged prostate with cystitis, which had followed the obstruction of the urethral passage; that he could not say positively just how long the trouble had existed, but in his opinion it was then of several months' standing; that Dorey then told the witness about having previously used a catheter and been obliged to take it into the woods with him that winter; that Dorey then stated that he had been using this catheter several months or more; that the witness attended Dorey at the latter's house on June 22, 23, and 24, 1895; that he could only say in a general way what was the matter with him; he did not remember attending him for anything except this water trouble; that he saw him nearly every day from July 1 to 21, 1895, but never for anything except water trouble; that a considerable part of the time Dorey was undressed and in bed; that from what he learned of the case it seemed to him that his condition had originated in a stricture with possibly an enlargement of the prostate, either or both of which might produce inability to pass water; that as a consequence of this inability Dorey had resorted to the use of a catheter, the introduction of which into the bladder, except under the most absolute surgical cleanliness, is liable to induce a purulent inflammation; that the use of a catheter in the woods without particular regard for cleanliness would be apt to produce such a condition as the witness found; and that he did not believe that the act of lifting of itself could produce that trouble.

Upon cross-examination, the witness further testified that, in his best judgment, a great strain produced by trying to lift too heavy a burden for a man's strength would have no effect upon the disease which he had mentioned; that he was certain he saw Dorey in February, 1894; that he next saw him on May 18 and 21, 1895, and found him suffering from some urinal disturbance; that in July, 1895, Dorey had severe cystitis; that it would be very difficult to say whether a man could work with this disease in its aggravated form; that it would depend on the grade of severity and the man's ability to do work under adverse circumstances; that on May 18, 1895, his condition was not so bad as when the witness saw him in July; that he had cystitis in May; that his symptoms, though not so severe as in July,

were still sufficient to leave no doubt that he had it in May, 1895; that in May, if he had considerable fortitude, he might have stood up and done his work; that he did not think he could have stood up until the latter part of June and done a very hard day's work; that such diseases as Dorey had in May, 1895, are incurable, so far as the obstruction to the water passage goes at least; that whether it could be so far relieved as to obviate a fatal result would be hard to say in a given case; and that this disease is not necessarily fatal at once.

On redirect examination, the witness testified that in his opinion Dorey was not in sound health on May 13, 1895.

Dr. A. W. Buck, called as a witness by the defendant, testified that he was the city physician of Fall River and knew Dorey; that Dorey died from poisoned uremia due to cystitis; that he was also afflicted with stricture of the membraneous portion of the urethra; that on February 1, 1897, when the witness first saw Dorey, he was in a condition resulting from advanced cystitis; that his general powers were very much reduced and his arteries hardened; that this trouble was of long standing; that cystitis would not be caused by lifting a stone; that cystitis in its chronic form is a serious disease; that a man of Dorey's age having an enlarged prostate or stricture and cystitis therefrom, in his opinion, would in his condition be incurable; and that, in the opinion of the witness, it would be impossible for a man who on May 18 had cystitis caused by an obstruction in the urinal passage, either due to an enlarged prostate or stricture, to have been in sound health on May 13, five days before, because the enlargement of the prostate is a gradual process.

The defendant requested the judge to rule as follows:

"1. On the whole evidence, the plaintiff is not entitled to recover. 2. If Orissime Dorey, the insured, had cystitis on May 13, 1895, the date on which the policy was issued, then the plaintiff is not entitled to recover."

The judge refused to give the first request, and instructed the jury with reference to the second request in part as follows:

" The defendant says that the deceased was afflicted with a grave, serious, and important ailment, cystitis; that it was not a mere temporary matter, but it was something which was permanent in its nature, and which did in effect result in his death. The

defendant says that there is no controversy or question in the case that he died of this inflammation of the bladder, cystitis, and that this was brought about not in a day, not in a week, nor in a month or in a year, but that it existed on May 13, 1895, and before that time.    It is not necessary that it should appear that the deceased knew it.    If he had it and did not know it, there can be no recovery in this case."    The defendant excepted to the refusal to give the rulings as requested.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*A. J. Jennings & J. M. Morton, Jr.*, for the defendant.

*E. Higginson*, (*C. R. Cummings* with him,) for the plaintiff.

HAMMOND, J.    This is an action by the administratrix of the estate of Orissime Dorey on an insurance policy on the life of said Dorey, dated May 13, 1895.    By the terms of the policy no obligation was assumed by the defendant unless the insured was, at its date, in sound health.    At the trial before a jury the only issue was whether or not Dorey was in sound health at that time.    Upon this question evidence was introduced on each side. Without reciting it here in detail, it is sufficient to say that the evidence introduced by the plaintiff would, if believed, warrant a verdict for the plaintiff, and that introduced by the defendant would, if believed, warrant a verdict for the defendant.    A pure question of fact, and not of law, was raised.    The first request was rightly refused.

Although the second request was not given in its exact terms, it was substantially given, and in clear language.

*Exceptions overruled.*