PERPETUA FLECKENSTEIN, Respondent, v. PROVIDENT IN-
SURANCE COMPANY, Appellant.

(186 N. W. 91.)

**Insurance — in an action on a life insurance policy; question of delivery held
one for jury.**

1. In an action upon a life insurance policy where the insured at the
time of the application directed the soliciting agent to send the policy
to be issued to a banker with whom the insured did business and the
application contained a memorandum to send the policy to such banker,
and, where the Insurance Company, acting upon the application, issued the
policy and sent the same to such banker, who was its agent, with in-
structions, uncommunicated to the insured, to deliver only upon being
satisfied after personal investigation concerning the good health of the
insured, it is *held*, upon the record, that the question of delivery was
one for the jury.

**Insurance — question as to insured's health on delivery of policy held one for
the jury.**

2. Where an insurance policy is delivered pursuant to a stipula-
tion in the application that it shall not take effect unless delivered to and
received by the insured while in good health, and where the insured, a
married man aged 24 years, was in apparent perfect health when the ap-
plication was signed, Oct. 21st, and the policy issued, Oct. 30th, and so
continued until the evening of Nov. 8th, the day when the policy was
delivered, excepting that he complained of a headache in the evening of
Nov. 6th and during the day of Nov. 7th, and where during the evening
of Nov. 8th the insured stated to have a fever, on Nov. 9th had a high
fever and was then partially confined in bed, and on the afternoon of
Nov. 10th died through "broncho-pneumonia" following an attack of
"influenza," and where the entire evidence concerning the good health
of the insured subsequent to the issuance of the policy and until his death
is dependent solely upon lay testimony unaided by that of medical
science, it is *held* that the question of the good health of the insured,
when the policy was delivered, was for the jury.

Opinion filed Nov. 28, 1921.

Action in District Court, Hettinger County, *Hanley*, J.

From a judgment in favor of the plaintiff and an order denying a
new trial the defendant has appealed.

Affirmed.

*Newton, Dullam & Young,* for appellant.

There was no delivery of the policy. Delivery while the applicant was in good health was essential to a completed contract. Thompson v. Travelers' Insurance Co. 13 N. D. 444; Bowen v. Prudential Ins. Co. of America, 51 L. R. A. (N. S.) 587; May on Insurance, 4th ed. Vol. 1, p. 60.

The defendant is not bound by any estoppel or waiver. Roth v. Mutual Reserve Life Ins. Co. 89 C. C. A. 262.

The general rule is that a return of the policy is not essential to the avoidance of a policy, nor is its retention a waiver. Blaeser v. Milwaukee Mechanics Mutual Ins. Co. 37 Wis. 31; 19 A. R. 747; Woodard v. German American Ins. Co. 128 Wis. 1; 106 N. W. 681.

*Jacobson & Murray,* and *Benjamin Rigler,* for respondent.

The non-return of the premium made the company liable upon its contract for the policy of insurance, if it failed to issue such a policy. Stearns v. Merchants Life & S. Co. 38 N. D. 525.

Physical delivery of the policy is not necessary. A legal delivery is sufficient. Unterharnscheidt v. Missouri State Life Ins. Co. (Iowa) 138 N. W. 459; New York Life Ins. Co. v. Pike, 117 Pac. (Col.) 899; New York Life Ins. Co. v. Greenlee, 84 N. E. 1101, (Ind.); Thompson v. Mich. Mutual Life Ins. Co. 105 N. E. (Ind.) 789; Francois v. Mutual Life Ins. Co. of New York (Ore.) 106 Pac. 323.

"When a company received an application for insurance, acts on it, signs and seals a policy complete in form, and forwards it to its agent for delivery to insured, the policy is deemed to have been issued from the date of its deposit in the mails." Rose v. Mutual Life Ins. Co. of New York, 88 N. E. (Ill.) 204; Stilp v. New York Life Ins. Co. (Wis.) 169 N. W. 606.

The company having knowledge that the policy was not physically delivered, by putting the plaintiff to expense in furnishing proof of loss, is now estopped to set up want of physical delivery as a defense to paying loss. Beauchamp v. Retail Merchants Ass'n (N. D.) 38 N. D. 483; Tero Detroff & Co. v. Equity Fire Ins. Co. (Iowa) 167 N. W. 660; Veenstra v. Farmers' Mutual Fire Ins. Co. of Ottawa and Allegan

Counties (Mich.) 161 N. W. 824; Springfield Fire & Marine Ins. Co. v. E. B. Cockrell Holding Co. (Okla.) 169 Pac. 1660.

An insurance company cannot take the applicant's money, keep it and get the benefit of it, and lead the applicant into believing he has a valid policy, and then at the same time take the position that there is no insurance. Horswill v. Mutual Fire Ins. Co. (N. D.) 178 N. W. 798; Yusko v. Middlewest Fire Ins. Co .(N. D.) 166 N. W. 539; Life Ins. Clearing Co. v. Altshuler, (Neb.) 75 N. W. 862; Watts v. Equitable Mut. Life Ass'n of Waterloo (Iowa) 82 N. W. 441; Commercial Union Assur. Co. v. Schumaker (Ind.) 119 N. E. 532; American Bankers' Ins. Co. v. Thomas, (Okla.) 154 Pac. 44; Rhodes v. Kansas City Life Ins. Co. 156 Mo. App. 281; 137 S. W. •907; Prudential Ins. Co. v. Shively, 1 Ohio App. 238.

## Statement.

BRONSON, J.   This is an action upon a policy of life insurance. The defense is that no contract of insurance was ever completed, the policy was not delivered and no premium ever paid. The jury returned a special verdict. From judgment entered, pursuant thereto, in plaintiff's favor, and from an order denying a new trial, the defendant has appealed. The record discloses some evidence as follows, or to the following effect: The insured, the husband of the plaintiff beneficiary, was a farmer 24 years old at the time of his death. On Oct. 21st, 1918, at the farm place of the insured, about 7 miles from Haynes or Hettinger, the soliciting agent of the defendant received the application of the insured for a life insurance policy of $2,000.00. Then, he issued to the insured a receipt acknowledging the payment of $62.62, to apply as payment for the first year on the proposed insurance. The receipt contained the following statement: "Insurance if issued, to be from date of Company's approval, but above amount will be returned if the applicant is examined and the policy is not issued."

In the application there is the following agreement, "That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy delivered to and received by me while in good health, and that the policy shall be issued as of the date of the company's approval."

On Oct. 22nd, 1918, the insured was examined by the Medical Exami-

ner. The home office memoranda of the defendant show that the application was received on Oct. 24th, 1918, and was approved by its Medical Director on Oct. 30th, 1918. Such memoranda contain the statement, "Ins. begins Oct. 30th, 1918," and the policy was issued and dated accordingly. The secretary of the defendant testified that on Nov. 6th, 1918, the application was officially approved and mailed to C. E. Bigham, Haynes, N. D., its local agent. Accompanying the policy, were form instructions, signed by a form signature, viz:

Provident Insurance Company by........................................, Secretary: These instructions read as follows:

"We hand you herewith the above policy which you are authorized to deliver only upon the condition that after personal investigation you have satisfied yourself that the applicant is not suffering from influenza or its after effects or any other disease and the completion of the inclosed personal health certificate, indicating that he has not been ill and that his state of health is the same as when his original examination was taken.

"In case there are any impairments which, in your judgment, would warrant a further postponement, please return the policy to this office with a statement of the facts.

"You will appreciate that due to present conditions, it is necessary that we take the precautions herein mentioned, and your most careful and hearty co-operation will be appreciated until conditions return to normal."

The widow testified that the soliciting agent, after the application and receipt were signed, told her husband that "if he was not accepted, he could have his money back within a week, the note would be returned." That her husband did not receive the note back. That her husband told the agent to send the policy to Mr. Bigham at Haynes. That her husband was doing business with Mr. Bigham at Haynes. That her husband also banked at Hettinger. That Haynes was about one quarter of a mile nearer than Hettinger. She also testified that from Oct. 30th, 1918, to Nov. 4th, 1918, her husband was in perfect health. That on Nov. 4th, 1918, he was in Haynes (the last time before his death) and was perfectly well. That on Nov. 5th and 6th, he was in perfect health. That in the evening of Nov. 6th, he complained of a headache. That on Nov. 7th he was still complaining of a headache but

was up and around. That on Nov. 8th he was up and around during the day time; during the night he started to get fever. That on Nov. 9th, he had pretty high fever and was in bed although he got up and walked around the room. On Nov. 10th, at 2:30 p. m., he died. The soliciting agent of the defendant testified in response to the question whether her husband had asked him to send the policy to Mr. Bigham, his banker, that he did not ask him to send it to the banker. That he did not represent to the husband that if the application was not accepted he would have his money back in a week. Upon the application, produced by the defendant and offered in evidence by the plaintiff, there appears on the back, upper margin thereof, the following: "Send policy to Chas. Bigham, Haynes." This is followed on the lower margin by the soliciting agent's certificate. Both are apparently in the same handwriting and made by the same lead pencil. On the face of this application is the declaration signed by the insured that he has paid to the soliciting agent $62.62. That he holds his receipt therefor and assents to the terms thereof. Mr. Bigham testified that he was the cashier of the bank at Haynes, and the agent of the defendant company. That he received the insurance policy involved together with the instructions on Nov. 8th, 1918. That about Nov. 6th, 1918, the insured called at the bank. That then he paid two notes there. That in his opinion at that time the insured was a mighty sick man. That the general pallor of his face showed it and in general he appeared to be sick. That he had this observation in mnid when he received the instructions with the policy. That he never delivered the policy. He did not testify that he returned the policy or advised the defendant concerning his observation. On Dec. 8th, a banker at Richardton advised the defendant of the death of the insured, by letter, stating therein correctly the number of the policy, and requesting the necessary blanks to be sent for proofs of death. On Dec. 19th, 1918, the defendant replied: "We are handing you herewith necessary proofs for completion and upon their return we will give the matter of the claim under the policy our prompt attention."

The secretary of the company testified that the company was first advised that the policy had not been delivered on or about Jan. 17th, 1919. On Feb. 8th, 1919, the banker at Richardton through letter requested another physician's certificate to be sent by reason of the former blank sent, having been mislaid or lost. On Feb. 11th, 1919, the defendant inclosed another physician's statement to be used with the understanding

that the company does not bind itself in any way as to the payment of the claim. On Feb. 9th, 1919, the banker further advised the defendant that it had taken them until that day to get in touch with the doctor who attended the deceased and that doctor had advised him that physician's statement had been mailed direct. On the last day of February, 1919, the defendant by letter advised the banker that it had not received the physician's certificate. On Mar. 14th, 1919, the banker by letter sent to the defendant papers concerning proofs of death.

The special verdict submitted to, and returned by, the jury is as follows:

"Question: Did Edmund Fleckenstein, the insured, at the time he made out the application for life insurance, inform the soliciting agent, Mr. Johnson, that C. B. Bigham, at Haynes, was his banker? A. Yes.

"Question: Did Edmund Fleckenstein, at the time he made his application for life insurance to the defendant company, request that the policy be sent to C. B. Bigham, his banker at Haynes, North Dakota? A. Yes.

"Question: Did the soliciting agent of the defendant company, Mr. Johnson, promise and represent to Edmund Fleckenstein, the insured, that if he did not receive a return of his premium within one week, that he would be sure that his application for insurance was accepted? A. Yes.

"Question: Was Mr. C. B. Bigham, the banker of Edmund Fleckenstein, the insured at the time that said Fleckenstein made his application for insurance with defendant company, and at the time that the policy was received by said Bigham? A. Yes.

"Question: Was Edmund Fleckenstein, the insured, in good health at the time the insurance policy involved in this action was received by the said C. B. Bigham? A. Yes.

"Question: Did the defendant company's officers, at the time that it sent out to the plaintiff the first blank proofs of death, have knowledge that the policy had not been physically delivered to the insured? A. Yes.

The defendant contends that the record discloses no delivery of the policy and, neither waiver nor estoppel affecting the company.

### Delivery.

Does the evidence warrant the findings of the jury that the policy was delivered while the insured was in good health? In this regard the de-

fendant maintains that neither the company nor its agent had any notice of any instructions by the insured that the policy be sent to his banker at Haynes, and, further, that, even so conceding, the delivery would be and was invalid because the evidence conclusively shows that on Nov. 8th, 1918, the health of the insured was impaired and he was then suffering from a mortal disease. There is evidence, however, in the record to warrant the finding that the defendant had notice of the instructions of the insured to send the policy to Bigham, his banker. On the back of the application the directions appear. In the memorandum of the home office concerning this application, there is inserted by some one, "to C. E. Bigham, Haynes, N. D." "See back of app." This is an apparent recognition of the directions on the back of the application. Neither the directions nor the memorandum state "agent" after the word Bigham. There is nothing in the record to show that either the soliciting agent or the insured knew that Bigham was the agent of the defendant. Possibly, the insured would have made the application to his banker, Bigham, if he had so known. The defendant accepted and approved the application. It issued the policy on Oct. 30th, 1918. It sent the policy pursuant to the instructions given. The insured was not advised concerning any secret instructions to Bigham or that Bigham was its agent. The insured did not contract for conditional delivery of the policy to Bigham, pursuant to Bigham's agency and dependent upon Bigham's investigation, opinion or judgment upon the insured's condition of health. The insured contracted for the issuance of a policy upon the defendant's approval, and for its delivery to Bigham, his banker, conditional only upon the payment of the first premium and his condition of good health when so delivered.

Upon the record the jury was warranted in finding that the policy was so delivered or entitled to be delivered to Bigham pursuant to the contract as made. This follows further from the fact that the record does not disclose that Bigham, as agent, acted upon the instructions or pretended to follow them. Although he testified that on Nov. 6th, 1918, he saw the insured and then the insured, in his opinion, was a very sick man, nevertheless, the record fails to disclose that he so advised the defendant, or returned the policy. Further, it was over two months thereafter, in accordance with the secretary's testimony, before the defendant knew that the policy had not been physically delivered to the insured. Furthermore, the parties did not contract that

the policy should not take effect until physically delivered. The contract of insurance was conditional upon payment of the premium and delivery to and receipt by the insured while in good health. The contract requirements did not necessarily demand as a condition precedent a manual delivery. Bowen v. Prudential Ins. Co. 178 Mich. 63, 144 N. W. 543, 51 L. R. A. (N. S.) 587, 590, 591. Unterharnscheidt v. Mo. State Life Ins. Co., 160 Iowa, 223, 138 N. W. 459. Phoenix Assurance Co. v. McAuthur, 116 Ala. 659, 221 South, 903, 67 Am. St. Rep. 154. See 25 Cyc. 718, 721; Thompson v. Mutual Life Ins. Co. 56 Ind. App. 502, 105 N. E. 780; N. Y. Life Ins. Co. v. Pike 51 Colo. 238, 117 Pac. 899. Upon the record, Bigham might be the agent of the insured, as well as the agent of the insurer. Amarillo Nat. Life Ins. Co. v. Brown (Tex. Civ. App.) 166 S. W. 658, 661; Young v. St. P. F. & M. Ins. Co., 68 S. C. 387, 47 S. E. 682. Joyce, Ins. Vol. 1, § 661.

*Good Health of Insured*: Was the insured in good health when the policy was delivered to Bigham?

In Joyce on Insurance, Vol. 3, § 2004, it is stated:

"The term, 'good· health' does not mean absolute perfection; but is comparative. The insured need not be entirely free from infirmity or from all the ills to which the flesh is heir. If he enjoys such health and strength as to justify the reasonable belief that he is free from derangement or organic functions, or free from symptons calculated to cause a reasonable apprehension of such derangement, and to ordinary observation and to outward appearance his health is reasonably such that he may with ordinary safety be insured and upon ordinary terms, the requirement of good health is satisfied. Slight troubles, temporary and light illnesses, infrequent and light attacks of sickness not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health."

In Goucher v. Trav. Men's Ass'n. (C.C.) 20 Fed. 596, 598, the court states:

"The term 'good health,' as here used, does not import a perfect physical condition. It would not be reasonable to interpret it as meaning absolute exemption from all bodily infirmities, or from all tendencies to disease. It cannot mean that a man has not in him the seeds of some disorder. As has been well remarked by some of the law writers, 'such an interpretation would exclude from the list of insurable lives a large proportion of mankind.' "

In Peacock v. N. Y. Life Ins. Co., 20 N. Y. 293, 396, it is stated:

"The word 'health,' as ordinarily used, is a relative term. It has reference to the condition of the body. Thus it is frequently characterized as perfect, as good, as indifferent, and as bad. The epithet 'good' is comparative. It does not require absolute perfection. When, therefore, one is described as being in good health, that does not necessarily nor ordinarily mean that he is absolutely free from all and every ill which 'flesh is heir to.'"

See, also, Morrison v. Ins. Co., 59 Wis. 162, 18 N. W. 13; Grattan v. Met. Life Ins. Co., 92 N. Y. 274, 44 Am. Rep. 372; Met. Life Ins. Co. v. McTague, 49 N. J. Law 587, 9 Atl. 766, 60 Am. Rep. 661.

In Thompson v. Travelers' Ins. Co., 13 N. D. 444, 101 N. W. 900, the stipulation in the policy stated, "This policy shall not take effect unless the first premium is actually paid while the assured is in good health." The Court said:

"It will be noted that this provision is not a mere representation that the assured was in good health, or a statement of his belief or opinion that such was the fact. It is equivalent to a warranty of the fact, and it is a fact agreed upon by the parties as a condition precedent to the attacking of defendant's liability. Apparent good health was not sufficient. The fact that a disease may be latent and unknown does not relieve the insured from his stipulation. It is the fact of good health which governs."

In Donahue v. Mut. Life Ins. Co., 37 N. D. 203, 221, 164 N. W. 50, 56, (L. R. A. 1918A, 300,) Justice Christianson stated:

"The term 'good health' is a comparative term and should be held to mean what is ordinarily understood by the term."

See Murphy v. Met. Life Ins. Co., 106 Minn. 112, 118 N. W. 355. Note 17 L. R. A. (N. S.) 1145; 43 L. R.A. (N. S.) 726; L. R. A. 1916F, 173.

In this record there is no expert or medical testimony concerning the good or ill health of the insured subsequent to the approval of the application. The determination of the health of the insured subsequent to the approval of the application is dependent wholly as a question of fact, upon lay testimony, unless this court imbued with the wisdom to be gleaned from medical science can determine, as it were like experts, as a matter of law, the question of good or ill health. The reason why the aid of medical science was not sought to be placed in the record,

is not stated. See Donahue v. Mut. Life Ins. Co., 37 N. D. 203, 217, 164 N. W. 50, L. R. A. 1918A, 300. It is not questioned in the record that the insured when the application was taken and when the policy was issued was in good health. Then, apparently, he was a healthy and sturdy young man. The lay testimony in the record further is undisputed that his good health continued until Nov. 6th, 1918. Then, Bigham, observed in his opinion that he was a very sick man. The widow observed that in the evening of Nov. 6th, he complained of a headache; that also on Nov. 7th, he complained of a headache and on the evening of Nov. 8th, he started to get a fever. Otherwise he had been theretofore up and around. The immediate cause of his death was "Broncho-pneumonia" following "influenza." Upon the record when was he not in good health? When does an attack of influenza or the existence of bodily conditions precedent thereto render one not in good health? Apparently, if we were to speak from statistics and the visual and mental knowledge forcibly brought to our attention during the epidemic of influenza in 1918, the disease was no respecter of persons. It attacked those apparently physically well and strong as rapidly as those otherwise. It attacked the young and vigorous even perhaps in greater numbers than the old and the weak. One might be apparently perfectly well today—and, on the morrow, attacked by the disease, nigh unto death. Does a headache render one not in good health? Nature's signals are constantly being given concerning one's bodily conditions. Perhaps, speaking out of our experience and the medical lore, not yet too definitely nor exactly known concerning influenza, we would readily say as a matter of fact, that the insured must have been necessarily in poor health on Nov. 8th, 1918. Because then the disease was at work and he died in fact on Nov. 10th, 1918. If the matter is to be determined on the record and by lay testimony, is not the question made one of fact for the jury, a question upon which the minds of reasonable men may differ. Dorey v. Met. Life Ins. Co. 172 Mass., 234, 51 N. E. 974; 25 Cyc. 950; Horne v. Hancock Mut. Life Ins. Co. 53 Pa. Sup. Ct., 330, 333; Healy v. Met. Life Ins. Co., 37 App. D. C. 240, 246. Upon this record we so believe and determine. It follows that the judgment and order must be affirmed. It is so ordered.

BIRDZELL, J., concurs.

CHRISTIANSON, J. (concurring). The pivotal questions in this controversy are: (1) Was the policy ever delivered? and, (2) Was the ir-

sured in good health at the time the policy was delivered? The jury in this case, in effect, answered both questions in the affirmative. It is the contention of the defendant insurance company that the evidence is insufficient to justify these answers; and it is asserted that both questions must be answered in the negative as a matter of law.

The evidence is by no means conclusive, but a careful consideration thereof leads me to the conclusion that it cannot be said, as a matter of law, that negative answers should have been made to these questions. In other words, I am of the opinion that there is evidence from which reasonable men might reach the conclusions which the jury, in this case, did reach.

GRACE, C. J. (concurring). The principles of law announced in the opinion of Mr. Justice Bronson in this case are largely similar and to the same effect as those announced by this Court in the case of Donahue v. Mutual Life Insurance Co., of New York, 37 N. D. 203, 164 N. W. 50, L. R. A. 1918A, 300.

ROBINSON, J. (dissenting). The Insurance Company appeals from a judgment against it for $2,000 and interest and costs, and from an order denying a motion for a new trial. The judgment is on a special verdict and on general findings of fact by the court. The defense is that the insurance contract or policy was never delivered to the deceased and that he never paid any premium. The answer avers and the fact is, that the deceased made to the Company a regular written application for insurance and on November 6th, 1918, the application was considered and approved by the Company and a policy of insurance was mailed to Mr. Bigham, the agent of the Company. On November 8th, 1918, the policy of insurance was received by the agent with special instructions in regard to the delivery, and on November 10th, 1918, and before delivery, the deceased died of influenza. On November 8th. 1918, the agent of the Company received the insurance contract with a letter as follows:

"Chas. E. Bigham, Agent, Haynes, N. Dak.

"Dear Sir—We hand you herewith the above policy which you are authorized to deliver only upon the condition that after personal ·investigation you have satisfied yourself that the applicant is not suffering

from influenza or its after effects or any other disease *and the completion of the enclosed Personal Health Certificate,* indicating that he has not been ill and that his state of health is the same as when his original examination was taken.

"In case there are any impairments which, in your judgment, would warrant a further postponement, please return the policy to this office with a statement of the facts.

"You will appreciate that due to present conditions, it is necessary that we take the precautions herein mentioned, and your most careful and hearty co-operation will be appreciated until conditions return to normal.   Yours truly,

"Provident Insurance Company,

"By ——, Secretary."

.   Certain it is that the policy was never delivered to the deceased, except by mailing the same to Bigham, the agent of the company.   Certain it is that on November 8th, 1918, the deceased was sick unto death and Bigham never had authority to deliver the policy.   Certain it is that the deceased never paid any insurance premium, except by giving a note which has not been paid.   The plaintiff contends that. Bigham was the banker and the agent of the deceased, as well as the agent of the company and that delivery of the policy to Bigham was a delivery to the deceased. But there never was a delivery of the policy to Bigham except for a special purpose and pursuant to special instructions, and he never had authority to deliver the policy because when he received it the deceased was on his deathbed.   The letter shows that Bigham had no authority to make delivery, save on certain conditions with which there was no compliance.

Then it is claimed that by furnishing ordinary blanks on which to make proof of death the company put the plaintiff to the expense of making proof.   To give any force to that point we must allow that the claim of the plaintiff was so dubious that it would not have been made if the company had not furnished the proof blanks.   It appears that when application was made for the blanks the company knew nothing, had no knowledge, concerning the delivery of the policy and in a courteous way the agent immediately forwarded the blanks, which was entirely proper. We can hardly believe that the claim of the plaintiff was so shallow that she would not have made proof of death even though the Company had refused to furnish the blanks.

The special verdict answers six questions to this effect:

1. That when the deceased made his application for insurance he informed Johnson, the soliciting agent of the company, that Bigham was his banker.

2. That he requested the policy to be sent to Bigham.

3. That Johnson, the agent, promised the deceased that his policy would be accepted or his note returned within a week.

4. That Bigham was the banker of the deceased at the time he made application for insurance, and at the time the policy was received by him.

5. "Q. Was the deceased in good health at the time the insurance policy was received by Bigham? A. Yes.

6. "Q. When the Company sent blank proofs of death, did it know that the policy had not been delivered? A. Yes."

Those findings are wholly unsupported by the evidence; and what if the deceased requested the policy to be sent to his banker or to any other person. His request did not make a contract. There was no delivery of the policy to Bigham nor any obligation to deliver it to him. It was merely sent to Bigham with special instructions showing that it was not to be delivered to a dead person or to a person on his death bed. There was no evidence that Johnson promised or had authority to promise the deceased that his application would be accepted within a week or any time, and that in case of failure his note would be returned. Johnson had no authority to bind the company by any promises or representations. The written application to the company for insurance is signed by the deceased. It reads thus:

"I agree as follows: That the insurance hereby applied for is not to take effect unless the first premium is paid and the policy delivered to and received by me while in good health; that the agent taking this application has no authority to make, modify or discharge contracts or to waive any of the company's regulations or requirements."

The testimony is short. It shows conclusively that Bigham received the policy on November 8th, when the deceased was on his death bed. Bigham testifies that he saw the deceased on November 6th and that he was then *a mighty sick man*. That he showed it by the general pallor of his face and in general appeared to be sick.

"Q. You never delivered the policy? A. No, sir.

It is true that Johnson received the application for insurance and gave a pencil receipt for $62.62, agreeing that it should be returned if the

applicant is examined and the policy is not issued; but it is not true that the policy acknowledges the receipt of $62.62, or any sum. It is true that deceased never paid any insurance premium, and that his estate is not liable to pay any such premium. Doubtless he gave something called a note, but because of his sudden death before delivery of the policy the note became mere worthless wastepaper. Hence it is entirely clear that the plaintiff has not shown, and she never can show, any existing and completed contract of insurance. The judgment should be reversed and the action dismissed.