SCHNEIDER, Respondent, vs. WISCONSIN LIFE INSURANCE COMPANY, Appellant.

*April 5—May 1, 1956.*

For the appellant there were briefs by *Schubring, Ryan, Petersen & Sutherland,* attorneys, and *James C. Herrick* of counsel, all of Madison, and oral argument by *Mr. Herrick.*

For the respondent there was a brief by *Frank M. Coyne* of Madison, and *Cook & Kalbacken* of Mount Horeb, and oral argument by *Mr. Coyne* and *Mr. Harry J. Cook.*

BROWN, J.   On April 25, 1951, Adolph Schneider, Jr., procured defendant's policy insuring his life in the principal sum of $5,000.  Premiums were payable on the 25th of April and October of each year, and there was a period of grace for thirty-one days thereafter so that the policy did not lapse if an unpaid premium was paid within that time.  Schneider failed to pay the premium due October 25, 1953, the policy lapsed November 25th, and on December 10th the company's agent called on him with an application for reinstatement which Schneider then signed.  Pursuant to this and to the payment of the premium the company reinstated the policy.

The application which Schneider signed contains several questions to be answered by the assured.  The ones now in controversy, with Schneider's answers, are:

"1. I am now in good health, free from all disease, deformities, and/or ailments, and of temperate habits, except:
"None.
"5. Since the date of my original application for this policy:
"(a) I have had no sickness or personal injury of any kind nor been an inmate of any hospital or institution, except:
"None."

The appellant submits that these representations were false and, as a matter of law, were made with intent to deceive.

The foundation for such charges consists of the following facts:

In early October, 1953, Schneider, who was a thirty-one-year-old farmer, was afflicted with a hard cold.  He continued to do his farm work but his wife thought he needed medical attention and called Dr. Marshall, who practiced in the near-by village of Hollandale.  Dr. Marshall came out to the farm in the evening.  He found Schneider in bed, with

a temperature of 103 degrees and suffering from chills. He administered a hypodermic injection of penicillin and was about to leave when Mrs. Schneider, who had not been in the bedroom, asked the doctor if he had seen the lump on her husband's testicle. The doctor had not, so he made an examination, by which he discovered a nodule about the size of a bean on Schneider's right testicle and the testicle was swollen. Dr. Marshall did not know exactly what this was but he told Schneider that such a thing could become serious and advised him to go to the Veterans' Hospital at Wood, Wisconsin, for a thorough investigation, offering to make the necessary arrangements as soon as the cold cleared up. Schneider was up and around the next day and thereafter. He went to Dr. Marshall's office in Hollandale for a few more penicillin shots and apparently made a complete recovery from the cold or, as Dr. Marshall also called it, the beginning pneumonia. When Dr. Marshall saw Schneider in town he repeated his warning about the testicle lump and his urging to Schneider to have the doctors at Wood look after it but Schneider did not follow the advice.

Schneider had worked during previous winters at the Oscar Mayer packing plant in Madison, and on October 12, 1953, he applied for a job there. This corporation subjects such applicants to a physical examination before offering employment and in Schneider's case the examination was conducted by a Dr. Allen. Dr. Allen testified that he found no evidence of pneumonia, temperature was normal, and "with reasonable certainty we could be sure there was no significant residual of any disease at that time." This doctor also testified that in examining for possible signs of hernia he examined the testicle area and the scrotum. He found and noted only a scrotal reflex in the right inguinal area which, he said, was not related to the testicle. In the absence of positive findings he approved Schneider's application for

work. Thereafter, Schneider worked steadily for the Oscar Mayer Company for several months.

As remarked before, the insurance premium fell due on October 25th and payment was neglected. On November 25th the policy lapsed. On December 10th the insurance agent called on Schneider and he signed the application for reinstatement with the representations above referred to concerning his good health and freedom from sickness. About March 15, 1954, Schneider became ill and had to quit work. He was spitting blood and consulted Dr. Marshall who made immediate arrangements for him to be admitted to the hospital at Wood. He died there May 27, 1954. The death certificate states he died of cancer, originating in the right testicle, which had invaded his entire system. The certificate states that the interval between the onset and death was one year. There was no testimony by doctors who saw Schneider at Wood and the death certificate speaks only for itself. Mrs. Schneider, beneficiary under the reinstated policy, made claim for the death benefit and in her proof of death certified that her husband had died of cancer and that he had first consulted a doctor for his last illness in October, 1953. She also certified that the disease for which that doctor was consulted was "cold and flu condition," and no doctor was consulted between the October, 1953, treatment by Dr. Marshall and her husband's arrival at Wood, on April 18, 1954. In fact, of course, Schneider again came under the care of Dr. Marshall about March 15, 1954, and remained there until he went to Wood, about April 18, 1954.

On these facts appellant submits that Schneider's representations on December 10, 1953, that he was then in good health, free from all disease, deformities, and/or ailments and that since the date of his original application for insurance he had had no sickness or personal injury of any kind were false and made with intent to deceive, as a matter of law; and the reinstatement of his lapsed policy in reliance

on these misrepresentations was void. If the representations were not false, of course, the contention that the reinstatement was void must fail.

"No oral or written statement, representation, or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation, or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss." Sec. 209.06 (1), Stats.

The jury found that the representations were not false. Under the instructions of the court it was then unnecessary for the jury to say whether they were made with intent to deceive and the jury did not answer the deceit questions.

Considering first the application's question concerning the health of the assured on December 10, 1953, the inquiry is directed to his condition at that time. The undisputed evidence is that he had had a bad cold or flu early in October and was treated by Dr. Marshall for it. He was not incapacitated by it, it soon cleared up and there was no evidence that he suffered any further effect from it. In testifying, the doctor said that this was a minor matter. On October 12, 1953, Schneider was examined by Dr. Allen when he applied for work at the Oscar Mayer Company, and that doctor testified that he found no significant residual of any disease. Concerning the testicle, the evidence is that Dr. Marshall was not called to the home in October to treat it but examined it at the suggestion of Mrs. Schneider. He gave it no treatment but informed Schneider that it *could* become serious and he should take precautions. Schneider did not follow the advice and the evidence strongly supports the inference that the swelling and lump went away, as Dr. Marshall testified it might. Mrs. Schneider, who was in a position to know and who had been concerned about it, testified that she did not again observe its presence in October, November, and

December. Dr. Allen testified that he examined the area in October, most significantly the scrotum, and found no abnormality. It is most improbable that an examination on October 12th such as the doctor described would fail to reveal the swelling or lump if it was then present. From October 12th to December 10th, when he signed the application, Schneider was working regularly at the packing plant and there is no evidence of ill-health or disability during this time, while his work record and the testimony of fellow employees indicates that his health was good. The question in the application for reinstatement of insurance asks for a statement of Schneider's present health. It is much like question 10 under consideration in *Fehrer v. Midland Casualty Co.* (1923), 179 Wis. 431, 439, 190 N. W. 910, where we said:

"We now come to the contention of the defendant that the plaintiff made false statements in his application pertaining to his health which wholly voided his policy. We have set out in the statement of facts the questions and answers referred to in this contention. The answer to question 10—'Are you in sound condition mentally and physically?'—requires a conclusion of the applicant, and his failure to draw the proper conclusion, unless he intentionally and falsely misrepresented the facts, will not be sufficient to annul the contract."

And see 45 C. J. S., Insurance, p. 404, sec. 595, stating:

"Where a question propounded to applicant from its very nature calls for matters of judgment, opinion, or belief, an untrue statement made by insured in the application will not avoid the policy unless the misrepresentation was knowingly made with intent to deceive the company. *The fact that insured committed error in answering a question calling for an expression of opinion does not constitute fraud in law.*" (Our emphasis.)

1 Appleman, Insurance Law and Practice, p. 226, sec. 218, states:

"Under some of the older policy forms, the courts were confronted with the question of determining whether or not the insured was suffering from any disorder at the time of application. If this is the question, disorders prior to that time are immaterial. Even when the time element is not specifically fixed by the application, if the question is expressed in such a manner as to lead the applicant to believe that the time of application is the time fixed, that is the test applied."

Question 1 of the special verdict is of this sort. On this record the jury could not be required to find that on December 10, 1953, Schneider's health was not good or that he had reason to believe it was not or that he was not free from disease or ailments. His answer was not false in law.

Proceeding to Schneider's representation in question 5 of the application that he had had no sickness or personal injury since the date of his original application for insurance, the jury found that this was not false, whereas the appellant contends that it was, and made with intent to deceive as a matter of law. Its argument is that approximately two and one-half months before Schneider signed this application he had been treated by Dr. Marshall for a cold and had been warned by the doctor that the condition of his right testicle "could become serious." Appellant does not press the matter of the cold but does submit that only two and one-half months after the warning about the testicle Schneider could not have forgotten about it, and his suppression of information about it to the Insurance Company must have been deliberate and with intent to deceive. Appellant also points out that the death certificate and respondent's proof of death show that death was caused by cancer originating in the testicle which had existed for a year preceding the date of death, May 27, 1954, and that Schneider was attended in his last illness by Dr. Marshall in October, 1953. On the other hand, it must be noted that the application does not inquire whether

Schneider had consulted a doctor. It asked and he answered only that he had had no sickness or accident of any kind or been hospitalized during the period. The authority of 3 Joyce, Law of Insurance (2d ed.), p. 3004, sec. 1849, is frequently quoted by the courts in this connection, stating:

"The decisions seem to agree that the terms 'sickness' and 'disease' do not mean a trifling illness nor occasional physical disturbances resulting from accidental causes and not permanent in their effects, nor a temporary illness which readily yields to professional treatment and leaves no permanent physical injury or disorder calculated or having a tendency to shorten life; . . ."

In an application for reinstatement of an insurance policy which represented that the insured had not since the policy was issued been "sick or afflicted with any disease," a cold will not be included, and, in the absence of proof that the cold referred to produced disease or sickness, the words cannot be construed as meaning absolute freedom from any bodily ills, but rather freedom from such ills as would ordinarily be called "disease" or "sickness." *Metropolitan Life Ins. Co. v. McTague* (1887), 49 N. J. L. 587, 9 Atl. 766.

An answer in an application that the applicant had never had any disease or infirmity when in fact he had at different times suffered from slight attacks of piles is not sufficiently material to invalidate the policy. *United States Health & Accident Ins. Co. v. Bennett* (1907), 32 Ky. L. Rep. 235, 105 S. W. 433.

"The health of an applicant for insurance upon his life, health, or bodily condition is of vital importance to the insurer, and questions to elicit information on the subject and in regard to illnesses and ailments of such person are proper to be asked and should be truthfully answered. Within the meaning of a statement by an applicant in such respect, the term 'illness' means a disease or ailment which is of such a character as to affect the general soundness and healthfulness of the system seriously, and not a mere temporary indispo-

sition which does not tend to undermine and weaken the constitution." 29 Am. Jur., Insurance, p. 455, sec. 562, citing cases stating that failure to mention a cold does not make a misrepresentation of the statement that the applicant had not been "sick or afflicted with any disease."

We consider that the representation on December 10th that Schneider had had no sickness since the policy was first written was not rendered false by the fact that he was treated for a nondisabling cold early in October. Concerning the matter of the testicle, we reach the same conclusion. Dr. Marshall was called to treat the cold and was informed of the swelling only incidentally. He did not make a diagnosis nor did he inform Schneider that he was suffering from any ailment in those parts; he only stated that such a condition *might become* serious. Schneider might reasonably infer from that that it might *not* become so, also, and that it was not serious presently nor, necessarily, in the future. He did nothing about it and the testimony of Mrs. Schneider and Dr. Allen warrants a belief that the symptoms had disappeared a few days later. There is no evidence that they were again present on December 10th or that, up to that time, they had ever rendered Schneider sick. Respecting the testicle, Schneider's answer was true. Surely, by truthfully saying that he has not been sick, the purchaser of life insurance is not to be understood to guarantee that there is not presently within his body some condition from which some day he may die. Appellant cites numerous cases where misrepresentation was found as a matter of law but in those the answer was not that the applicants had not been sick; it was that they had not been treated by a doctor. There was no room for doubt that such answers were responsive to unambiguous questions and were false and concealed facts which the insurer had a right to know. It is otherwise in the present case. The applicant had not been sick, as that term is commonly understood, and as it has been construed

in such matters, and the insurer did not inquire whether he had received medical treatment for minor conditions or otherwise.

Appellant places reliance on the recitations of the death certificate and proof of death. The former says that the disease from which Schneider died was present for a year before his death, May 27, 1954. Therefore, it is argued, Schneider could not have been in good health on December 10, 1953, as he said he was in the application's question 1. But question 1 required him to state only his honest opinion, as we have already said.

Mrs. Schneider's statement in the proof of death dates the last illness back to October, 1953, when Dr. Marshall attended her husband. The statements in the proof of death are apt to be based on hindsight and *ex post facto* medical advice. They do not necessarily contradict Schneider's representation of his opinion, in question 1 of the application, that he was then in good health and free from disease nor, in question 5 that he had not been sick. The proof of death might permit an inference, if the jury had so chosen, that the parties, including Schneider, knew all the time that Schneider was afflicted with a fatal illness, and accordingly his answers in the application were false and made to deceive. It falls far short of compelling that conclusion as a matter of law. The testimony of Mrs. Schneider and Doctors Marshall and Allen, which we have already referred to, create questions for the jury, not for the court, and sustain the jury's answers.

*By the Court.*—Judgment affirmed.