POLLACK, Appellant, v. RESERVE LIFE INSURANCE COM-PANY, Respondent.

*November 29, 1961—January 9, 1962.*

338

For the appellant there were briefs by *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and oral argument by *Robert C. Skemp*.

For the respondent there was a brief by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Daniel T. Flaherty*.

BROWN, J.   At the time the policy was applied for and issued, Margaret Pollack was a maiden lady sixty-three years of age.  She had suffered from encephalitis when a child and had since then been mentally retarded.  Her brother-in-law, Harry Downer, looked after her few business affairs.  Downer had known her for sixty years, had lived in Miss Pollack's home for eighteen months in 1950–1951 and continually there since 1953.  He testified that she is not incompetent.  At the start of the trial as a precautionary matter, on motion of defendant, her attorney was appointed guardian *ad litem*.  Miss Pollack was subject to acute gastrointestinal disorders which required hospitalization in the La Crosse Hospital three times in the three-year period preceding the application for insurance, and had doctor's services frequently on other occasions.  On and after January 1, 1957, Miss Pollack entered and remained as a patient in the Gund Nursing Home in La Crosse.  She was there because Downer placed her there.  He called on her there at least weekly and usually oftener.  He paid her bills at the Home and in the hospital.

In May, 1958, an agent of defendant insurance company called on Mr. Downer to try to sell him insurance.  Downer was not in the market for it but said Miss Pollack might want some.  The solicitor, Doering, asked about Miss Pollack's health and Downer referred him to Miss Pollack's doctor, Dr. Watunya.  Doering did make a brief inquiry and the doctor said that there was nothing actually the matter with her.  On June 5th Doering returned to Downer with an insurance-application form to be executed by Miss Pollack.  Downer told Doering that Miss Pollack was in the home resting.  Doering did not know that she was in the rest home and it was not made clear to him that she was not in the house where Downer lived and where she had formerly lived.  Downer told the solicitor that they should not disturb her and it would not be necessary for doing so

because he handled all her affairs and could give the company all pertinent information concerning her.

In completing the application for insurance, Downer gave Miss Pollack's residence as the place which in fact had been her residence until Downer had transferred her to the nursing home eighteen months earlier. He did not disclose that Miss Pollack no longer lived at her former address and, much-more serious, that she was now an inmate of a nursing home.

The application form required the applicant to certify "to the best of your knowledge and belief, are you, and all the other members of the family group to be included now in good health and free from any physical or mental defect?"

Downer answered "Yes" to that question and to following questions he answered that to the best of the applicant's knowledge and belief Miss Pollack had never had "(a) any disease of the heart, lungs, kidney, stomach, or bladder . . . (b) high blood pressure, paralysis, arthritis, syphilis . . . (c) cancer, diabetes, hernia, goiter, or rectal disease . . ." and that she had not received medical or surgical advice or treatment within the past three years.

When the answers had been completed Downer signed the application "Margaret Pollack." On June 11, 1958, defendant issued the policy upon which this action is brought.

The answers were false in so far as they concerned the facts of Miss Pollack's residence at the date of the application and her physical and mental history and present condition. Plaintiff does not contend that the answers were not false nor that if defendant had known the truth it would have issued the policy. Defendant did not learn the facts until plaintiff claimed benefits provided by the policy in connection with her hospital confinements September 14 to October 4, 1958; October 23 to October 31, 1958; November 1 to November 9, 1958; November 10 to November 17, 1958. It then acted promptly to repudiate the policy.

The findings of fact recited in the small claims court's memorandum decision *supra* are in accord with the evidence without substantial dispute except that it is difficult under the circumstances for us to extend the credit which that court gave to Downer's possible belief that he was stating facts. We do not pursue that subject because, under the circumstances, it makes no difference whether Downer was lying or merely mistaken.

Thus we come to the basis of plaintiff's appeal, that the application demanded only Downer's best knowledge and belief that the answers were true, and he gave his answers on those qualifications, wherefore there was no misrepresentation. However, the application required the *applicant's* best knowledge and belief and Downer was not the applicant—the applicant was Miss Pollack. It was her name signed to the application. If she acted by agent nevertheless it was *her* knowledge and belief which was material, not Downer's. Her agent's ignorance of the facts does not excuse her in untruthful answers. In a case of misrepresentations made by a seller's agent we have said, *Heal v. Stoll* (1922), 176 Wis. 137, 146, 185 N. W. 242:

"It is also argued by defendants' counsel that Schroeder [the principal] had no knowledge that the representations had been made and therefore is not liable.

"But in such cases the scienter or wrongful intent is not indispensable. If it were the rule that a principal is immune from loss when his duly authorized agent makes false representations inducing a bargain, there would be little safety in a large proportion of the business transactions of daily life. *The seller is bound to know that the representations made by himself or his authorized agent to induce a sale are true.* [Cases cited.]"

The facts were false and it cannot be presumed that she was ignorant of her repeated illnesses requiring residence in a nursing home and previous frequent hospitalization.

The circumstances give rise to Miss Pollack's opportunity to repudiate Downer as her agent. Instead of doing so she brought suit on the policy which he has obtained for her, thus indisputably adopting as her own his act and declarations.

"The cases cited by the learned counsel for the defendant abundantly demonstrate the rule of law to be, that if Richard S. Law acted as the agent of the plaintiff in negotiating the sale of the mortgaged premises, the latter is responsible for all the means employed by his agent to effect the sale. If the agent effected it by means of false representations or fraud of any other description, although without authority from the plaintiff to do so, and although the plaintiff was entirely ignorant that he had done so, the legal status of the plaintiff is precisely the same as it would have been had he made the false representations or committed the fraudulent acts to the same end, in person." *Law v. Grant* (1875), 37 Wis. 548, 557.

One of the first of the law-Latin phrases to which the student of the subject of Agency is exposed is *qui facit per alium, facit per se*. In contemplation of law what Miss Pollack did by another person she did by herself. It is she, then, who made the representations of the application, as by the signature "Margaret Pollack" she purports to make them. It is she who declared that she believed the representations to be true. If she was incompetent to answer the questions about her present and recent personal history and know that the answers were false, surely she would be incompetent to appoint an agent, ratify his acts, or enter into a contract with an insurance company. Downer testified she was competent and we cannot assume she was not—we must conclude her representations, including her knowledge and belief in them, were false.

Appellant cites *Schneider v. Wisconsin Life Ins. Co.* (1956), 273 Wis. 105, 76 N. W. (2d) 586. That case is not in point because there the evidence showed that the ap-

plicant was ignorant, justifiably ignorant, of the presence of a latent disease which did not become manifest until after the policy was issued. That is quite different from the present declaration of the applicant, Miss Pollack (to take a single example), that she believed she had no medical treatment in the past three years, and no physical or mental infirmity, although she had during that period been a patient in the La Crosse Hospital where she was treated for illness and was presently an inmate of the nursing home.

Since the principal has adopted the representations of the agent, for present purposes the good faith of the agent is unimportant and the representations, including the belief in them, are to be treated as those of the principal. Accordingly, we agree with the learned trial court and the circuit court that the defendant has the right to cancel and avoid the policy because of material misrepresentations of fact made by Downer, and ratified and adopted by Miss Pollack, which increased the risk and were relied on by defendant in issuing the policy notwithstanding any mistaken belief of Downer's that he was telling the truth.

*By the Court.*—Judgment affirmed.

GORDON, J., took no part.